IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| William S. Drake and<br>Andrea K. Drake,<br><br>      Plaintiff,<br><br>v.<br><br>DePuy Orthopaedics, Inc., DePuy.<br>Inc., DePuy International Limited,<br>Johnson & Johnson, Johnson & Johnson<br>Services Inc., and Johnson & Johnson<br>International,<br><br>      Defendants. | Case No.: 13-dp-20140 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE THE MASTER SETTLEMENT AGREEMENT AND TO VACATE ARBITRATION AWARD

### INTRODUCTION

Plaintiff William Drake Williams ("Plaintiff"), respectfully moves this Court to enforce the Master Settlement Agreement and vacate the arbitration award made on July 22, 2016, between Plaintiff and Steven M. Johnson of Johnson Law Firm. Specifically, the award must be vacated due to the evident partiality that resulted from the arbitrator's non-disclosed relationship with Defendant. The Arbitrator awarded Mr. Steven Johnson $196,612.50 for his contingency fee and $136, 457 in attorney's fees in

1

pursuit of the fee dispute, and $20,145.47 in JAMS fees, totaling $353,214.97. **(See Ex. J)**. Over $350,000 from Mr. Drake. This is from a few months of inadequate representation and four pages of medical records ordered. This award is unconscionable and it is in the interest of the MDL to vacate the arbitrator's award.

## STATEMENT OF FACTS

Plaintiff, William Drake, has been represented by Meshbesher & Spence, Ltd. since January, 2013 with regard to his DePuy ASR hip claim. Prior to Meshbesher & Spence's representation, Attorney Steven M. Johnson d/b/a The Johnson Law Firm, ("Johnson") represented William Drake for a brief period of time. See Attorney Representation Agreement, attached at **Ex. A**. Johnson sent many letters (**Ex. B**) and called over 50 times before representation commenced. **Ex. G**. Unable to sign up Mr. Drake or have Mr. Drake return his calls, Johnson sent a letter stating, **"Failing to contact us may result in the closing of your file and the loss of your rights."** (emphasis original) **Ex. C**. Believing his time to bring a claim was running out, Mr. Drake signed Johnson's Representation Agreement. Mr. Drake was unrevised at this time and having no recall-related problems. Johnson's misleading words caused Mr. Drake to sign the contract.

During Johnson's brief representation, very little work was done. **Ex. H, I**. Mr. Drake fired Johnson for good cause. Mr. Johnson incurred a total of $384.09 in costs in pursuit of Mr. Drake's claim, $350.00 of which was the filing fee for filing the Short

2

Form Complaint in this MDL. **Ex. I**. There is a disagreement between the Plaintiff and Johnson Law Firm as to whether the Short Form Complaint was impermissibly filed. That is, the Complaint was filed when Johnson was at least on notice of termination, and Plaintiff asserts the Complaint was filed to bolster the expenses of Johnson after he was aware of the termination. Based on this period of brief representation and costs, Johnson now seeks over $350,000.00 of Mr. Drake's ASR settlement award, including his full contingency fee contract and attorney's fees in pursuit of the fee dispute. Johnson seeks $196,612.50 for his contingency fee contract with Mr. Drake, $384.09 for costs, $78,645.00 to pay one of the attorneys who represented Johnson in the fee dispute and $88,832.00 for a second, and unnecessary, fee dispute attorney. In other words, from less than a year of representation, six months of which Mr. Drake did not hear from his attorney, and less than $400.00 in costs, Johnson seeks over $350,000.00 of Mr. Drake's award.[1]

Meshbesher has represented Mr. Drake through both "Round 1" and "Round 2" settlements[2]. Meshbesher became aware of Johnson's prior "representation" after receiving an email from defense counsel that another Complaint had been filed in the MDL. Mr. Drake was unaware a Complaint was filed on his behalf, and that Johnson had failed to serve the Preliminary Disclosure Form as required by this Court, a

---

[1] Numerous other violations and allegations have been asserted, and Plaintiff will inform the court as needed.
[2] Mr. Drake had bilateral DePuy ASR hips.

3

deadline that was triggered by Johnson's filing. **Ex. D.** Meshbesher attorney, Anthony Nemo contacted Johnson regarding the representation. Mr. Johnson asserted a lien of his full contingency fee contract. Nemo informed Johnson that he did not believe he was entitled to such a fee but offered to get a Special Master involved to resolve the dispute. **Ex. E.**

After the "Round 1" settlement was reached, Mr. Drake was served with two separate causes of action initiated by Johnson. The first was in the United Stated District Court, Northern District of Texas, where Johnson sued a total of five former clients in the DePuy ASR litigation in an effort to enforce his contingency fee agreement. **Ex. F.** The second cause of action was an arbitration proceeding through JAMS.

The Northern District of Texas initially dismissed the case *sua sponte* because the Judge believed the amount in controversy was not met. Eventually the lawsuit was dismissed for lack of personal jurisdiction.[3] The JAMS proceeding continued. During the JAMS proceeding, the Arbitrator disclosed that he was serving as an Arbitrator on another matter with Ms. Jenny Andrews, Johnson's fee dispute counsel. Days before the arbitration was to take place, it came to Meshbesher's attention, through its own research, that not only was Ms. Andrew's the attorney on the other arbitration, but Johnson was **the subject** of that other, subsequent arbitration. The Arbitrator never disclosed this relationship with Johnson. Such a disclosure was required under JAMS

---

[3] With the exclusion of an airport layover many years ago, Mr. Drake had never even set foot in Texas.

4

rules and Texas law. In other words, a disclosure should have been made in order to avoid the appearance that the Arbitrator would decide the Drake arbitration in a manner favorable to Johnson in order to continue to be employed and paid in the other subsequent arbitration. Such disclosure was never made and only through the research of Meshbesher & Spence, was it found.

## ARGUMENT

### I. THE NORTHERN DISTRICT OF OHIO AND THIS COURT HAVE JURISDICTION

Any fee dispute should have been brought to this Court. Section 1.2.55 of the Master Settlement Agreement ("MSA") has been interpreted to mean that attorney representation disputes should be referred to a Special Master in circumstances such as these. Furthermore, MSA 3.2.3.2 states that "any dispute over representation that cannot be resolved by the law firms may be submitted to the Special Master for review and resolution." Mr. Nemo attempted such resolution early on in the process. Mr. Drake only participated in the JAMS arbitration to avoid default judgment.

Importantly, Johnson consented to the jurisdiction of this Court when he filed Mr. Drake's Complaint into the MDL, and filed numerous other Complaints into this MDL. In addition, Johnson further consented to the jurisdiction of this Court, on the attorney fee dispute, when he only dismissed Mr. Drake's duplicative complaint after adding the following language to the Stipulation for Dismissal,

> "The Parties further recognize that the Johnson Law Firm has asserted a claim on any recovery the Plaintiff may make for any injuries related to the DePuy ASR for the full amount of all monies that [Johnson Law Firm] is entitled to under the terms of its contract with the Plaintiff and that this dismissal shall have no effect on those claims." [4]

Johnson specifically names his attorney dispute in the MDL with this document, subjecting himself to the Court's jurisdiction regarding the attorney fee dispute.

In addition, Mr. Johnson sued five of his former DePuy ASR clients, all who are subject to the jurisdiction of this MDL. The goal of an MDL is to promote judicial efficiency and this was not accomplished through the drawn out arbitration process forced on Mr. Drake by Johnson. At least five MDL plaintiffs are facing this same dispute. The MDL's objective for efficiency of judicial resources should have been followed by bringing this fee dispute to the MDL.

Finally, and most importantly, this MDL has a strong interest in monitoring the integrity of the Master Settlement Agreement and the attorneys who have submitted to this jurisdiction of this Court. The egregious acts of one attorney in the litigation threaten the integrity of the entire MDL, particularly when it involves several clients. This Court has jurisdiction to vacate the arbitration award.

---

[4] During the arbitration, Johnson admitted that this is unusual language and he was worried about his fee.

II.    **LEGAL STANDARD REGARDING DISCLOSURE**

To establish evident partiality, Plaintiff must prove that the Arbitrator failed to disclose known facts that "might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington N. R.R. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997); *Mariner Fin. Grp., Inc. v. Bossley*, 79 S.W.3d 30, 35 (Tex. 2002).

Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. 1 et seq. sets forth three relevant grounds for setting aside an arbitration award. Section 10, 9 U.S.C. §10, provides:

> (a) In any of the following cases, the United States court in and for the district wherein the award was made may make an order vacating the award upon application of any party to the arbitration-
>
> …
>
> (2) Where there was *evident partiality* or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct … or any other behavior by which the rights of the party have been prejudiced.

Section 10, 9 U.S.C. §10 (emphasis provided). Here, non-disclosure of the Arbitrator's additional Arbitration with Steven Johnson in a markedly similar case resulted in evident partiality. Therefore, the arbitration award should be vacated.

7

### III. PLAINTIFF'S RIGHTS WERE PREJUDICED IN THAT THE ARBITRATOR FAILED TO DISCLOSE RELATIONSHIP WITH STEVEN JOHNSON.

Failure to disclose a fact that otherwise meets the evident partiality test could satisfy the evident partiality test even if the undisclosed information does not prove actual partiality or bias. *See Burlington Northern Railroad*, 960 S.W.2d at 636. (emphasis added).

> [W]e hold that a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she **does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality**. Plaintiff emphasizes that this evident partiality is established from the **nondisclosure itself** regardless of whether the non-disclosed information necessarily establishes partiality or bias.

*See Commonwealth Coatings Corp. v. Cont'l Cas, Co.*, 393 U.S. 145, 147 (1968) (finding evident partiality based on arbitrator's failure to disclose conflict, even though there was **no evidence of actual bias**).

Here, under *Commonwealth*, the Arbitrator and Johnson were required to disclose any dealing that might create a reasonable impression of possible bias. Accordingly, Johnson, through his attorneys, should have disclosed the other, subsequent Arbitration. Whether the other arbitration would have caused bias is immaterial as **the nondisclosure itself** establishes partiality or bias.

Moreover, in *Positive Software Solutions v. New Century Mortgage Corp.*, 476 F.3d 278, 282-83 (5th Cir. 2007) (en banc), the Fifth Circuit held "[e]vident partiality" may be

based on nondisclosure of information by an arbitrator if it "involve[s] a significant compromising connection to the parties." *Id.* "The 'reasonable impression of bias' standard is thus interpreted practically rather than with utmost rigor." *Id.* at 283. "In nondisclosure cases, a showing of actual bias is not required." *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1312 (9th Cir. 2004). Here, under *Positive Software*, this Court must determine that the failure of the Arbitrator and Johnson to make proper disclosures "involve[s] a significant compromising connection to the parties."

Although, bias is not required to vacate the award, it is easy to allege where bias could have been shown here. If the Arbitrator did not find in favor of Johnson in the Drake Arbitration, Johnson and his lawyers may not want to continue in the Arbitrator's second, subsequent arbitration. In other words, the Arbitrator would not have been paid for his time in the second arbitration. However, it is not necessary this bias be shown. Just because the impartiality did not happen[5], does not mean the criteria to vacate the award have not been met. As discussed, the nondisclosure itself shows evident partiality and bias. Based on these grounds, this Court has the authority to vacate the arbitration award.

## CONCLUSION

For the foregoing reasons, Plaintiff William Drake moves this Court to vacate the arbitration award.

---

[5] Upon objection to Jurisdiction by Drake and Meshbesher & Spence, the Arbitrator withdrew from the other, subsequent arbitration, but did not withdraw from the Drake arbitration.

9

DATED: June 22, 2016          MESHBESHER & SPENCE

By *[signature]*
Anthony Nemo (MN #221351)
Andrew Davick (MN #332719)
1616 Park Avenue
Minneapolis, Minnesota 55404
tnemo@meshbesher.com
adavick@meshbesher.com
(t) 612-339-9121
(f) 612-339-9188

ATTORNEYS FOR PLAINTIFF