# JAMS ARBITRATION

| | | |
|---|---|---|
| STEVEN M. JOHNSON, | § § § | |
| Claimant, | § | REFERENCE No. 1310021509 |
| v. | § § | |
| WILLIAM DRAKE, | § § | |
| Respondent. | § § § | |

## CORRECTED FINAL AWARD

**Parties and Counsel**:  The parties are identified in the caption and represented as follows:

Barry Johnson
Thomas R. Needham
3116 W. Fifth St.
Suite 107
Fort Worth, TX 76107
Phone: 817-523-1330; Fax: 469-248-0602
Email: johnsonneedhamlaw@gmail.com
Counsel for *Claimant*

Jennifer Morris Andrews
2501 Parkview Dr.
Suite 303
Fort Worth, TX 76102
Phone: 817-338-1707; Fax: 817-338-1787
Email: j.andrews@wallach-law.com
Co-Counsel for *Claimant*

Anthony Nemo
Ashleigh E. Raso
Andrew L. Davick
1616 Park Avenue
Minneapolis, MN 55404
Phone: 612-339-9121; Fax: 612-339-9188
Email: tnemo@meshbesher.com; araso@meshbesher.com;
       adavick@meshbesher.com
Counsel for *Respondent*

EXHIBIT

4

Karin Cagle
1619 Pennsylvania Ave.
Fort Worth, TX 76104
Phone: 817-721-5127; Fax: 817-335-7735
Email: kcaglelaw@gmail.com
Co-Counsel for *Respondent*

**Arbitrator:**     Hon. Glen M. Ashworth
           JAMS – The Resolution Experts
           8401 N. Central Expressway, Suite 610
           Dallas, Texas 75225
           Phone: 214-744-5267; Fax: 214-720-6010

**Case Manager:**   Carolina El'Azar
           JAMS – The Resolution Experts
           8401 N. Central Expressway, Suite 610
           Dallas, Texas 75225
           Email: celazar@jamsadr.com
           Phone: 214-891-4520; Fax: 214-720-6010

Pursuant to the arbitration provisions contained in paragraphs 13-15 of their Attorney Representation Agreement – DePuy ASR Hip Device ("ARA"), signed by Respondent, William Drake ("Drake"), on January 24, 2012, and Claimant, Steven M. Johnson ("Johnson" and also referred to as the Johnson Law Firm or "JLF") on January 30, 2012, the parties have submitted to binding arbitration before Hon. Glen M. Ashworth, serving as their sole Arbitrator. The arbitration was convened in Dallas, Texas, beginning April 4, 2016. The parties proceeded to present their offers of proof, including statements of counsel, testimony of fact and expert witnesses, depositions and documentary evidence. Thereafter, the parties submitted post-arbitration briefing for consideration.

The Arbitrator has determined that all matters in controversy submitted to this tribunal are arbitrable and that proper jurisdiction exists. All issues have been determined by the evidence presented during the full arbitration. The standard of proof is based on a preponderance of the evidence, unless otherwise stated.

## CLAIMANT'S MOTION TO CORRECT

The Final Award in this matter (JAMS Ref. No. 1310021509) was signed and service perfected on June 22, 2016. On June 28, 2016, the Claimant filed "Claimant Steven M. Johnson's Motion to Correct Final Award Pursuant to JAMS Rules 24 (d) and (j)." Claimant's Motion seeks to amend the Final Award to include additional procedural findings and to correct a typographical error.

The JAMS rules, and specifically Rule 24, neither provide for nor allow post-award modifications or amendments. Accordingly, the Arbitrator declines to address this request.

The Arbitrator does find, however, that a typographical error does exist in the Final Award, page 14, last sentence of first paragraph of Section G: "Attorneys' Fees" in the following respect: the term "ADA" should be properly corrected to "ARA".

Pursuant to JAMS Rule 24 (j), Claimant has timely requested this typographical correction and Respondent has raised no timely objection to this change. This requested correction is therefore GRANTED and is changed in the body of the Corrected Final Award.

## PROCEDURAL HISTORY

This arbitration arises from an attorney fee collection suit brought by Steven Johnson, whose primary law office is located in Ft. Worth, Texas, against his former client, William Drake, a resident of Minnesota. Pursuant to their Attorney Representation Agreement, Drake agreed to pay a contingent fee of 40% of amounts recovered from Drake's DePuy hip replacement device claims. Johnson's representation was subsequently terminated by Drake.

Following a settlement of Mr. Drake's claims, Johnson seeks payment of his contingency fee.

On July 31, 2014, Johnson initiated this arbitration with the Dallas office of JAMS, Ref. No. 1310021501, and served a Demand on Drake (the "Dallas JAMS arbitration"). The following day, Johnson filed an Original Complaint to Compel Arbitration in the Northern District of Texas, Ft. Worth Division, Cause No. 4:14-CV-611 (the "Ft. Worth suit"). The Ft. Worth suit was subsequently dismissed by the Judge, Hon. John McBryde, for lack of *in personam* jurisdiction in a Memorandum Opinion and Order dated November 25, 2014.

On August 15, 2014, Drake entered an appearance in the Dallas JAMS arbitration by filing a Response to Arbitration Demand and Statement of Affirmative Defenses. Respondent also challenged jurisdiction based on the lack of *in personam* jurisdiction finding and dismissal of the Ft. Worth suit. The arbitration was formally commenced on August 27, 2014. Following commencement, the parties jointly participated in the arbitrator selection process and selected Hon. Glen M. Ashworth as their sole arbitrator.

Pursuant to an Interim Order, dated January 20, 2015, the Arbitrator found jurisdiction to arbitrate existed and that the issues were arbitrable. The Arbitrator thereafter established discovery deadlines contained in Scheduling Order No. 1, dated January 30, 2015. Following a request for rehearing and citing waiver through Respondent's full participation in the arbitration process, jurisdiction was confirmed in an Interim Order, dated February 23, 2015. In accordance with the Scheduling Order, the parties jointly engaged in the established discovery and pre-arbitration preparation.

By agreement of the parties and for purposes of settlement discussions, the original hearing date of July 16-17, 2015, was continued. Thereafter, by Scheduling Order No. 2, dated November 23, 2015, the matter was set for hearing on April 4, 2016.

In early 2016, Drake sought to invoke the MDL arbitration process and Special Master Yanni issued her Scheduling Order No. 1 in JAMS Ref. No. 1200048059 on February 16, 2016 ("JAMS MDL arbitration"). In response, Johnson filed a Petition to Compel Arbitration in the Northern District of Texas, Dallas Division, Cause No. 3:16-CV-0094-D on February 22, 2016 (the "Dallas suit"). On March 9, 2016, Special Master Yanni issued Order No. 2: Jurisdiction, in the JAMS MDL arbitration, and concluded she did not have jurisdiction over the matter and withdrew her Scheduling Order No. 1. Accordingly, Johnson filed a Notice of Voluntary Nonsuit in the Dallas suit on March 11, 2016.

The arbitration hearing was then begun on April 4, 2016, in Dallas, Texas.


## BACKGROUND


Claimant, Steven M. Johnson, is an attorney whose principal office is located in Ft. Worth, Texas. For the last 20 years, his practice has been primarily devoted to the areas of mass tort and Multi District litigation ("MDL"). Having done extensive research and investigation into the defects regarding the DePuy ASR hip replacement device ("DePuy hip device" or "device"), he began to promote his legal services for the prosecution of those related cases. In soliciting for those claims, he utilized the national newspaper media, as well as websites and seminars. He did not use a television campaign.

Respondent, William Drake, is a resident of Minnesota. He is a college graduate and successful businessman. On April 19 and May 31, 2007, Drake was implanted with left and right DePuy hip devices. Although not experiencing medical issues with the devices at the time, someone on his behalf contacted Johnson's office by phone on September 27, 2010, and

requested information regarding representation. Between September 28, 2010 and January 19, 2012, JLF contacted Drake through calls and letters 57 times. According to the JLF call notes, most of the calls resulted in voice messages. Several calls, however, were received directly by Drake or his wife, Andrea Drake, including an October 18, 2010 call between Drake and Johnson. Additionally during this time, JLF also provided Drake with an information packet, a proposed Attorney Representation Agreement and medical authorization, medical and legal updates and articles, a list of frequently asked questions and an informative video. While Respondent and his wife expressed interest in Johnson's representation, Drake testified that he did not read any of the material. Following 6 months of no direct contact from Drake, Johnson sent him a final letter on January 19, 2012, which stated that "Failing to contact us may result in the closing of your file and the loss of your rights."

On January 24, 2012, without ever personally meeting Johnson and according to Drake, without reading the documents, Respondent signed and initialed the ARA and medical authorization. Johnson signed the contract on January 30, 2012. On March 9, 2012, Johnson forwarded Drake a letter which accepted the representation and included instructions regarding the updating of his medical condition and revision surgeries. The letter also contained phone numbers to reach Johnson and his staff for any questions related to his case. Subsequently, Johnson put the DePuy manufacturer on notice of Drake's claims on March 12, 2012, and thereafter obtained his medical records.

Following notification to DePuy and obtaining Drake's medical records, there was limited attorney/client communication between April through October, 2012. Essentially, the next phase of the case was subject to the timing of the revision surgeries. Although Drake claims he and his wife made several phone calls to JLF requesting updates, the call notes do not reflect

such inquiries. Significantly, the call notes do reflect and Mrs. Drake acknowledged that she called JLF on November 28, 2012. During this call, she advised that "Drake was having revision surgery on December 17, but would not give further information because she wasn't sure if they would leave the case with JLF or move it to a friend, who was an attorney."

On November 29, 2012, Respondent signed a Substitution of Attorneys document hiring Charles H. Johnson, a Minnesota attorney, to represent him in his DePuy claims. The following day, Charles Johnson forwarded a letter to Steven Johnson advising him of the substitution and enclosed a copy of the document. In his letter, Charles Johnson explained the basis for the termination and substitution was due to his "ongoing professional relationship with Mr. Drake's family" and that "they wanted a local attorney who they could actually meet with in person." In that letter, he additionally requested a copy of the file from JLF. Finally, on December 5, 2012, Drake called JLF and spoke to an assistant, Rudy Villareal. The conversation was reflected in the call notes and Drake advised that "Chuck Johnson who is local and a big hitter would be taking over the case." Although Drake was reminded of the ARA, he nonetheless indicated Charles Johnson was going to handle the case and "is going to work something out with Steven Johnson." Drake had his left hip revision on December 17, 2012.

On January 10, 2013, Charles Johnson again requested the file and it was subsequently forwarded to him on January 17, 2013. In the interim, Drake terminated his attorney/client relationship with Charles Johnson on January 14, 2013, and hired the Minnesota law firm of Meshbesher & Spence, Ltd. ("Meshbesher"). JLF put Meshbesher, through its partner, Tony Nemo, on notice of his attorney contract lien of 40% of the full recovery, plus expenses, on March 24, 2013. Subsequently, on June 30, 2014, Nemo responded to Johnson and disputed his claim and denied his entitlement to "any portion of the settlement.

After Johnson's termination, Drake received both his left and right hip revisions and Meshbesher settled all of his claims in the MDL. The parties have stipulated that his recovery of all Settlement Awards, as of the date of this arbitration, was $561,750, per the Settlement Program schedule that was admitted, without objection. In addition, there remains an outstanding claim for discretionary loss of earnings award (EIF Claim No. 3585) which has not yet been determined.

The preceding background statement is found by the Arbitrator to be true and necessary to the Award. To the extent that this recitation differs from a party's position, that is the result of determinations as to credibility, relevance, burden of proof and weight of the evidence, both oral and written.

Claimant seeks recovery of his 40% (35% net) contingency fee and expenses from Drake's awards. Respondent denies his claim based on an invalidity of the ARA; fraudulent inducement; "good cause" for termination; unconscionability of the fee; and, fee forfeiture. These issues will be addressed herein below.

## FINDINGS AND CONCLUSIONS

### A. Attorney Representation Agreement

The ARA was signed by Drake on January 24, 2012, and by Johnson on January 30, 2012. This agreement is found to fully set the necessary terms of the attorney's engagement and the 40% contingent fee arrangement. Additionally, it contains the arbitration provisions, which Drake specifically initialed. The ARA also provided that the contract "shall be construed in accordance with the laws of the State of Texas."

To avoid the contract's enforceability, Drake testified that, like all the materials provided to him, he signed the ARA without reading it. Even if such testimony was to be believed, that does not excuse him of contractual liability under Texas law. Additionally, Mr. Drake complains that the express terms, especially the arbitration provisions, were not explained to him and thus compromised his understanding of the document. Importantly, Mr. Drake possesses a college education and admits to having successfully having run at least three businesses, where the reading and understanding of contracts were involved. The credible evidence does not support Drake lacked the understanding of the ARA terms nor that he had an inadequate capacity to comprehend them.

Respondent's primary complaint was the absence of a "termination provision" which should have apprised Drake that termination without "good cause" would bind him to the 40% contingency, post termination. Respondent argues such omission prevented a "meeting of the minds" necessary to commit him to the contract. Initially, it is illogical to believe Drake was deprived of any relevant language in a contract he admittedly failed to read. More significantly, Respondent cannot offer any Texas case or legal precedent which makes such a provision a requirement to a valid fee agreement. Interestingly, the Meshbesher Retainer Agreement, signed by Drake, also does not contain such a termination provision.

From a review of the circumstances surrounding the signing of ARA and the necessary terms of such agreement, the ARA is found to be a valid and enforceable contract between the parties.

## B. Fraudulent Inducement

Respondent's claim of fraudulent inducement centers on Johnson's January 19, 2012, letter wherein it states that: "Failing to contact us may result in the closing of your file and the

loss of your rights." To support such an allegation, Drake must show that there was a (1) material misrepresentation; (2) which was false; (3) which was either known to be false when made or was asserted without knowledge of the truth; (4) which was intended to be acted upon; (5) which was relied upon; and, (6) which caused injury. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670 (Tex. 1990).

The January letter to Mr. Drake followed the delivery of 16 months of informative material regarding the DePuy device and its medical risks and 6 months of no direct contact from the Respondent. In this context, advising Mr. Drake that closing his file could result in the "loss of your rights" was not demonstratively false or misleading. A plain reading of the language only states the obvious. Inasmuch as Drake had shown no previous interest in preserving any future claims, it would seem only logical that he would not do so going forward. Drake avers that the language misled him into believing that if he didn't sign the ARA, time was "running out" and he was "going to lose my rights if I didn't act on it." The alleged reliance by Drake, having never bothered to read anything else from JLF, and then signing but not reading the ARA, is found not to be a credible position.

Respondent's claim of fraudulent inducement is DENIED.


## C. Good Cause

Pursuant to Rule 1.15 of the Texas Disciplinary Rules of Professional Conduct ("DR" or "Rules"), a client is allowed to discharge an attorney with or without good cause. With regard to a contingency fee contract, however, the line of cases arising from *Mandell & Wright v. Thomas,* 440 S.W.2d 891 (Tex. 1969) provide that if such attorney is discharged without good cause before the representation is completed, he may seek

compensation either *in quantum meruit* or in a suit to enforce the contract by collecting the fee from any damages the client subsequently recovers, even if he fails to complete the terms of representation. While good cause is a question of fact, it generally requires a showing that the attorney has failed to perform his duty to his client in a manner that an attorney of ordinary skill and ability would have performed under similar circumstances or that the attorney materially disregarded his professional duties as expressed in the Rules.

The evidence reflects that Johnson was effectively terminated on November 29, 2012, when Drake signed a Substitution of Attorneys document and hiring Minnesota attorney, Charles H. Johnson. This termination was done without any discussion or previous complaint by Mr. Drake. In a letter from Charles Johnson to JLF on November 30, 2012, the new counsel explained his basis for termination as "an ongoing professional relationship with Mr. Drake's family" and that "they wanted a local attorney who they could actually meet with in person." Neither of those two reasons approach good cause and importantly, were made with the benefit of new counsel. In a follow-up call by Drake on December 5, 2012, he stated that "Chuck Johnson who is local and a big hitter would be taking over the case." Those admissions at the time of termination are found not to support termination for good cause.

Following termination and two law firms later, Drake raises several after-the-fact allegations for good cause. Among them, Drake claims there was a lack of attorney/client communication, and yet the call notes credibly dispute Drake's complaint of 6 unreturned calls. Likewise, Drake's complaint that he wasn't informed of the effect of a termination without cause is not compelling, especially since his decision to

terminate was made with the benefit of new counsel. Respondent alleges several other bases for good cause, including misleading, but unread, communications in the pre-contract solicitation material; a rude conversation with a member of JLF's staff; the premature filing of the short form petition with the MDL; and, a delayed delivery of Drake's file. In total, Respondent's belated reasons were self-serving, at best, and none rose to a level of good cause. They are found to be manufactured to offset the inadequate explanations actually given at the time of the termination.

At the time of the termination, Johnson had adequately fulfilled his legal duties of representation. Respondent's basis for termination of JLF is found to be without good cause.

### D. Unconscionability of the Fee

The ARA provided that Johnson was assigned a 40% contingency fee from the Respondent's recovery. As an initial matter, a 40% contingency fee is found to be within an acceptable range of the usual and customary fees charged in this type of a case. Likewise, such a fee is not, on its face, contrary to the factors observed in DR 1.04.

In making his claim of unconscionability, however, Drake cites the limited amount of professional time committed to his case prior to termination. Certainly, Johnson was terminated early in the litigation process, at a time when Respondent's medical records were limited and prior to his revision surgeries. Drake additionally complains that Johnson's fee was unconscionably disproportionate to the actual amount of work involved before the termination without cause.

In addressing these complaints, however, DR 1.04 and the attendant comments

generally provide that the circumstances at the time a fee arrangement is made should control in the question of unconscionability. See, *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 560 (Tex. 2006). The testimony reflected that when Johnson accepted the case, the outcome was uncertain, with no assurance that a successful result would evolve. Additionally, JLF accepted the risks of protracted litigation, in potentially multiple forums and at an expense borne by him prior to a recovery. There was no evidence presented that when the contract was formed, Johnson accepted a risk not commensurate with a 40% contingency fee. Likewise, there was no evidence submitted that Johnson was either incapable or unwilling to complete his professional duties to recover the awards ultimately received by Drake with subsequent counsel. Based on this perspective and in context with the Disciplinary Rules, the ARA was not an unconscionable contract between the attorney and client. Further, while the decision to terminate without cause immediately subjected Drake to an economically unfavorable outcome, the principles established in *Mandell & Wright* are persuasive to reject any public policy arguments.

Respondent's claim of an unconscionable fee is DENIED.


## E. Fee Forfeiture

Finally, Drake cites *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) as the basis for a fee forfeiture in this case. To prevail on such a theory, Respondent must establish that Johnson committed clear and serious breaches of his ethical and fiduciary duties to Drake. This requires a factual analysis using the Disciplinary Rules for necessary guidance, as well as reviewing the gravity and timing of a violation, its willfulness and the harm to the client.

From the testimony presented by Respondent, this fee forfeiture claim was essentially no more than the factual re-casting of his previous good cause argument for termination. Just as the evidence failed to sufficiently raise good cause, it likewise was insufficient to support a breach of Johnson's ethical and fiduciary duties to Drake, and certainly not one which rose to a serious level ever contemplated by *Burrow.*

Drake's request for a fee forfeiture is DENIED.


### F. Contingency Fee

Although it is found that Johnson's 40% contingency fee was reasonable and is usual and customary in this type of case, the MDL judge assessed a "common benefit" fee applicable to all claimant attorney fee awards. The parties stipulated this during this arbitration and accordingly Johnson's fee is modified to a "net" 35% contingency.

The parties also stipulated that Meshbesher has subsequently settled Drake's A and B Settlement Award for both his left and right hip in the amount of $561,750.00, per the Settlement Program schedule that was jointly admitted. In applying Johnson's net 35% contingency, he is entitled to receive and is AWARDED an attorney fee in the amount of $196,612.50.

Additionally, the testimony reflected that there still remains a discretionary loss of earnings award (EIF Claim No. 3585) which has not yet been determined. If and when Drake recovers from this claim, Johnson is AWARDED 35% of that to be determined amount.

### G. Attorneys' Fees

Johnson seeks the recovery of his attorneys' fees expended in this arbitration as a

prevailing party for breach of contract, pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. Drake argues, however, that no such breach has occurred. Certainly there was no breach at the time the ARA was terminated without cause, as it was Drake's right to end the relationship at any time. Thereafter, JLF put Respondent, through counsel, on notice of his 40% attorney contract lien on March 4, 2013. Subsequent to this notice, Respondent steadfastly rejected this claim and failed and refused to pay Johnson his contingency fee following recovery in the MDL. As stated in the June 30, 2014, email by Meshbesher partner, Terry Nemo, the claim for the fee was denied as to "any portion of the settlement." It is found that failure to pay Johnson his contingency fee following a recovery was a breach of the ARA.

JLF was represented throughout this matter by Ft. Worth attorneys, Thomas Needham ("Needham") and Jennifer Andrews ("Andrews") with the firm of Wallach Andrews. Both Needham and Andrews filed affidavits supporting their requests for fees and expenses. Needham initially signed a 40% contingency contract with JLF on July 15, 2014. It is found that such arrangement was not appropriate for consideration in this case because in January 2016, Needham retained Andrews to serve as co-counsel and to complete and try the case. Consequently, the assessment of fees was analyzed on an hourly basis. In addressing the hourly rate, each affidavit sought a rate of $250/hour.

In reviewing the Needham and Andrews affidavits and the attached billing records, the Arbitrator is mindful of the factors articulated in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997). Taking into consideration each attorney's qualifications and the nature and subject matter of the proceedings, $250/hour is found to be both reasonable and customary within the Dallas/Ft. Worth legal

community. Andrews also employed the services of attorney Cynthia Maragoudakis, at the rate of $200/hour, and paralegal, Michele Rayburn, at the rate of $95/hour. Likewise, these rates are found to be reasonable and customary.

In specifically reviewing the Needham affidavit, he has included his time for both the federal Ft. Worth suit and the Dallas JAMS arbitration. It appears that the unsuccessful federal litigation to compel this arbitration was not a necessary proceeding. While Respondent challenged jurisdiction in the arbitration proceeding, he voluntarily participated in the case without the necessity of being compelled by any court action. Accordingly, the time entries associated with the Ft. Worth suit have been disregarded in calculating the fee award.

Critically, the Needham records often reflected block billing and vague entries. The Andrews affidavit was heavily redacted, which effected the clarity of several entries. To avoid overlapping or duplicate billing, therefore, Needham's time entries were not considered after engaging Andrews in January 2016. By employing this methodology, the resulting balance of the fees incurred by each of Claimant's attorneys present an efficient and non-overlapping use of legal resources.

From a review of the billing affidavits, and considering the time involved, the complexity of the case and the multiple forums, the reasonable and necessary fee award for Needham is $47,625, and for Andrews is $88,832. Although each attorney has also requested expenses attendant to their representation, they are found to be both insufficiently specific and not the type usually associated with a Chapter 38 award.

Accordingly, Johnson is AWARDED his reasonable and necessary attorneys' fees in the amount of $136,457. Additionally, he is AWARDED his expended JAMS costs

and Arbitrator fees in the amount of $20,145.47.

# FINAL AWARD

For the foregoing reasons, it is ORDERED that:

1. The parties' Attorney Representation Agreement is found to be a valid and enforceable contract;

2. Drake's claim of Fraudulent Inducement is DENIED;

3. The parties' Attorney Representation Agreement was terminated by Drake without "good cause";

4. Drake's claim of an Unconscionable Fee is DENIED;

5. Drake's claim for Fee Forfeiture is DENIED;

6. Johnson is AWARDED his net 35% contingency fee from Drake's A and B Settlement Award in the amount of $196,612.50;

7. Johnson is AWARDED his net 35% contingency fee from Drake's discretionary loss of earnings award (EIF Claim No. 3585) to the extent of the yet determined amount and if and when Drake recovers from this claim;

8. Johnson is GRANTED a lien on Drake's recovered claims, as indicated in items 6 and 7, above;

9. Drake is found to have breached the Attorney Representation Agreement;

10. Johnson is AWARDED from Drake his attorneys' fees in the amount of $136,457;

11. Johnson's request for litigation expenses is DENIED;

12. Johnson is AWARDED from Drake his expended JAMS costs and Arbitrator costs in the amount of $20,145.47; and,

13. This Final Award resolves all issues for decision in this proceeding and all other relief not expressly granted is DENIED.

DATED: July 7, 2016.

_____
HON. GLEN M. ASHWORTH,
Arbitrator

## PROOF OF SERVICE BY E-Mail & Fax

Re: Johnson, Steven M. vs. Drake, William
Reference No. 1310021509

I, Carolina El'Azar, not a party to the within action, hereby declare that on July 07, 2016, I served

the attached Corrected Final Award on the parties in the within action by electronic mail and fax at Dallas,

TEXAS, addressed as follows:

Barry Johnson Esq.
L/O Barry N. Johnson
3116 W. Fifth St.
Suite 107
Fort Worth, TX 76107
Phone: 817-523-1330
Fax: 469-248-0602
johnsonneedhamlaw@gmail.com
    Parties Represented:
    Steven M. Johnson

Anthony Nemo Esq.
Ashleigh E. Raso Esq.
Andrew L. Davick Esq.
Meshbesher & Spence
1616 Park Avenue
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
tnemo@meshbesher.com
araso@meshbesher.com
adavick@meshbesher.com
    Parties Represented:
    William Drake

Thomas R. Needham Esq.
L/O Thomas R. Needham
3116 W. Fifth St.
Suite 107
Fort Worth, TX 76107
Phone: 817-523-1330
Fax: 469-248-0602
johnsonneedhamlaw@gmail.com
    Parties Represented:
    Steven M. Johnson

Karin Cagle Esq.
Kirkley Law Firm, LLP
1619 Pennsylvania Ave.
Fort Worth, TX 76104
Phone: 817-721-5127
Fax: 817-335-7733
kcaglelaw@gmail.com
    Parties Represented:
    William Drake

Jennifer Morris Andrews Esq.
Wallach & Andrews, P.C.
2501 Parkview Dr.
Suite 303
Fort Worth, TX 76102
Phone: 817-338-1707
Fax: 817-338-1787
j.andrews@wallach-law.com
    Parties Represented:
    Steven M. Johnson

I declare under penalty of perjury the foregoing to be true and correct. Executed at Dallas, TEXAS on July 07, 2016

Carolina El'Azar
JAMS
celazar@jamsadr.com