# SETTLEMENT AGREEMENT

Between

DePuy Orthopaedics, Inc.

And

The Counsel Listed on the Signature Pages Hereto

Dated As Of November 19, 2013


EXHIBIT F

Article 3

Registration of All Filed and Unfiled ASR Hip Implant-related Claims

Section 3.1. Registration

    3.1.1. The purposes of the registration requirements set forth below are to allow the Parties and the Courts to identify the filed and unfiled cases and claims Connected With ASR Hip Implants, to create a joint database of such cases and claims which will help the MDL Court and Other Courts cooperatively manage this litigation and assist the Parties with effectuating the provisions of this Agreement.

Section 3.2. Plaintiff-Attorney Requirements

    3.2.1. Case Specific Data and Court Orders. The Parties agree to apply jointly in each of the Coordinated Proceedings and Other Courts for an order, substantially in the form of Exhibit 3.2 (the "Registration Order"), within ten (10) days following the execution of this Agreement, requiring any plaintiffs' counsel representing clients with ASR-related claims pending in court to identify to DePuy, the SOC, and the Claims Processor, all clients with ASR-related claims, whether or not involving a Revision Surgery, whether their claims are filed or unfiled, and regardless if that plaintiffs' counsel agrees to enroll clients under the settlement, as well as the identity of the Primary Law Firm responsible for the claim, together with the Principal Responsible Attorney and legal assistant for that claim, and all Interested Counsel with an Interest in that claim, and to provide certain information about each claim. The Registration Orders also shall apply to Pro Se Plaintiffs with ASR-related claims. The Registration Order shall direct Counsel and Pro Se Plaintiffs to use a standard template issued by the Claims Processor without deviating from its format for the accurate and efficient transfer of the required information about each claimant and claim to the Claims Processor and the Parties.

    3.2.2. The Claims Processor will maintain a joint database of all cases filed in any court and all unfiled claims identified pursuant to the Registration Orders, which database shall be made available to the MDL Court, the courts in the Coordinated Proceedings, Other Courts and the SOC and DePuy. The database may include for every registered ASR-related claim, *inter alia*, the current venue, case number, the identity of the Primary Law Firm responsible for the claim, together with the Principal Responsible Attorney for that claim and Interested Counsel for that claim as well as other claim-specific information. Nothing herein prevents either DePuy or the SOC from maintaining their own separate database of all registered Plaintiffs and Unfiled Claimants. Subject to the Registration Orders entered by the courts, the registration obligations are set forth below.

    3.2.3. Filed Cases—Obligations of Plaintiffs' Counsel.

        3.2.3.1. Designation of Principal Responsible Attorney. In addition to the other information required pursuant to the Registration Orders, the registration of each filed case must designate the Principal Responsible Attorney

and legal assistant for that case. The Principal Responsible Attorney so designated shall be jointly identified by the Primary Law Firm and Interested Counsel by name, state bar number, business address, and email address.

3.2.3.2. Designation of Primary Law Firm. For each filed case pending in either state or federal court, there must be a single designation of a Primary Law Firm. The Primary Law Firm must also identify all of the clients in which they are Primary Law Firm by serving a list of all filed ASR XL and ASR Resurfacing claims – whether revised or unrevised -- in which such law firm, or any attorney at such law firm, is Primary Law Firm as of the Execution Date of this Agreement or the date of the implementation Order, whichever is later. Service requirements shall be set forth in the Final Settlement Agreement. For any filed case or unfiled claim in which multiple firms have been designated as the Primary Law Firm, any dispute over representation that cannot be resolved by the law firms may be submitted to the Special Masters for review and resolution.

3.2.3.3. The designation of a Primary Law Firm and/or Principal Responsible Attorney is not intended to impact in any way the rights or obligations of all Counsel who represent a client, including all Interested Counsel, nor shall such designation alter the relationship among Counsel.

3.2.3.4. Interested Counsel. For each filed case pending in state or federal court, all counsel who have an Interest in the ASR-related claim of a plaintiff but who are not designated the Primary Law Firm shall be referred to as Interested Counsel in this Agreement and shall be identified. However, the term Interested Counsel includes the Primary Law Firm and Principal Responsible Attorney unless stated otherwise. This Agreement is not intended to impact the rights and obligations of Interested Counsel's attorney-client relationship with any such EUSC. Interested Counsel and the Primary Law Firm shall be jointly responsible for compliance with any Court Orders.

3.2.4. Unfiled Claims –Obligations of All Plaintiffs' Counsel.

3.2.4.1. Identification of Unfiled Claims. Pursuant to the Registration Orders, Plaintiffs' Counsel, including all Interested Counsel, must identify clients by serving on DePuy and the Settlement Oversight Committee a list of all unfiled ASR XL, ASR Resurfacing and/or Hemiarthroplasty claims – whether revised or unrevised -- in which such counsel has any financial interest and which will include basic information about each claim in the form of Exhibit 3.2 and shall identify the Primary Law Firm, Principal Responsible Attorney and Interested Counsel for such unfiled claims.

3.2.5. Pro Se Registration Filed Cases. EUSCs who have not retained counsel as of November 11, 2013 but who have a pending lawsuit also must register pursuant to any Registration Orders. The forms for Pro Se registration and the deadline for registration will be determined by the Parties. The SOC will be available to assist EUSCs



Special Masters, who is not involved and who has not rendered a decision in connection with the matter at issue, will be randomly selected.

12.1.4. In the event of a dispute described in clause (iii) of Section 12.1.3, DePuy, on the one hand, and the SOC, on the other, shall, within five (5) Business Days of referral of such matter to the Claims Administrator, submit to each other and the Claims Administrator, its proposed form of Administrative Agreement. Either DePuy or the SOC may, in its discretion, within a further five Business Days, submit to each other and the Claims Administrator a memorandum supporting its position. If two proposed forms of Administrative Agreements are submitted, the Claims Administrator shall select between the two proposed forms of agreement on the basis of which proposed agreement in its opinion more closely reflects what is customary and "market" for agreements of the nature contemplated by the relevant Administrative Agreement (entered into in the context of programs of the nature of the Program) and such other matters as the Claims Administrator shall consider appropriate under the circumstances.

12.1.5. Any decision of the Claims Administrator pursuant to this Section 12.1 shall be final and Non-Appealable and binding on the Parties and (without limitation of the foregoing) the Parties shall take all actions required in order to implement such decision.

Section 12.2. Claims Administrator

12.2.1. The Claims Administrator will oversee the U.S. Program and will work with the Claims Processor, the Special Masters, SOC and DePuy, and others to ensure that the express terms and intent of the Agreement are properly and fairly applied in the U.S. Program and that clear errors are avoided.

12.2.2. The Claim Administrator is James J. McMonagle, Esq., and/or his agents, or upon his resignation or removal, any Person(s) to be appointed by the Parties to oversee the administration of claims for benefits and to make final and binding determinations under this Agreement with the authority of an Arbitrator under the Federal Arbitration Act.

Section 12.3. Claims Processor

12.3.1. The Claims Processor is BrownGreer PLC, 250 Rocketts Way, Richmond, VA 23231, Telephone: (804) 521-7202, Facsimile: (804) 521-7299, or upon its resignation or removal, any Person(s) to be appointed by the Parties to oversee the administration of claims for benefits and to make final and binding determinations under this Agreement with the authority of an Arbitrator under the Federal Arbitration Act.

12.3.2. The Claims Processor may hire paralegal or administrative assistant(s), as needed in the discretion of the Claims Processor and the consent of the Claims Administrator. Any such hires shall be compensated by the Administrative Program Fund, at a rate which shall be approved by a majority of the SOC and the Claims Administrator.

Section 12.4. <u>Special Masters</u>

    12.4.1. The private Special Masters will be selected by the agreement of DePuy and the majority in number of the SOC. There will be three private Special Masters retained to perform the Special Master tasks set forth in this Agreement.

    12.4.2. The three private Special Masters chosen by the Parties to fill these positions are: Catherine A. Yanni, Esq., the Hon. John K. Trotter (Ret.), and the Hon. Marina Corodemus (Ret.) or upon the resignation or removal of any one Special Master, any Person(s) to be appointed by the Parties to oversee the administration of claims for benefits and to make final and binding determinations under this Agreement with the authority of an Arbitrator under the Federal Arbitration Act.

Section 12.5. <u>Certain General Authority of the Claims Processor</u>

    12.5.1. The Claims Processor shall have the authority to perform all actions, to the extent not expressly prohibited by, or otherwise inconsistent with, any provision of this Agreement, deemed by the Claims Processor to be reasonably necessary for the efficient and timely administration of this Agreement.

    12.5.2. The Claims Processor may create administrative procedures, supplementary to (and not inconsistent with) those specified herein that provide further specific details about how U.S. Program Claims are administered, and/or other aspects of the U.S. Program; <u>provided, however</u> that such procedures comply with the terms of this Agreement.

    12.5.3. Without limitation of the foregoing, the Claims Processor shall, with the concurrence of the Claims Administrator, have the authority to modify and/or supplement the form of Enrollment Form, Claims Form and/or Supplementary Claims Form provided for herein to provide for more efficient administration of the U.S. Program, provided that (i) such changes may not materially alter the substance of such form without the consent of both DePuy and a majority in number of the SOC, (ii) such changes in any event must be approved by the liaison committee described in Section 12.5.4 below and (iii) no change shall be made in the form of Release or form of Dismissal With Prejudice Stipulation without DePuy's prior written consent.

    12.5.4. Each of DePuy and the SOC shall appoint one or two individuals (such number to be determined in each of their respective discretion) to act as a liaison ("Liaison") with the Claims Administrator, Claims Processor or any Special Master, including answering any questions that the Claims Administrator, Claims Processor or a Special Master may have with respect to the interpretation of any provision of this Agreement. Appointments under this Section shall be in writing in a Notice to other Party and to the Claims Administrator, Claims Processor and the Special Masters.



under the Federal Arbitration Act and their decision, except as subject to review under the Agreement, are final, binding, and Non-Appealable.

14.1.2. Except as specifically provided in this Agreement, any dispute that arises under or otherwise in connection with (i) this Agreement and/or any U.S. Program Claim and/or (ii) any other Administrative Agreement under which disputes are agreed to be handled in the manner set forth in this Article 14, shall be submitted to the Claims Administrator who shall sit as a binding arbitration panel and whose decision shall be final, binding and Non-Appealable. If any such dispute is brought to the Claims Administrator, each party who has a stake shall have 15 days (or as the Claims Administrator shall otherwise order) to submit papers and supporting evidence and to be heard on oral argument if the Claims Administrator desires oral argument. In the event of a dispute among the Parties over the interpretation of this Agreement, reference may be made to the Term Sheet, which although not controlling, the express terms of the Term Sheet were intended to be consistent with this Agreement.

14.1.3. If the Claims Administrator concludes, for whatever reason, that he should not determine an issue arising under this Agreement or otherwise in connection with this Agreement and/or any U.S. Program Claim, then one of the Special Masters who has not rendered any decision with regard to the matter at issue will be randomly chosen and shall sit as a binding arbitration panel to decide the issue.

14.1.3.1. In such instances, any party may serve a demand for arbitration on the Special Master and all parties who have a stake in the issue disputed. Service shall be effected by regular and certified mail. Service shall be complete upon mailing.

14.1.3.2. The parties who have a stake in the issue disputed and who participate in the arbitration shall agree upon appropriate rules to govern the arbitration. If the parties cannot agree on appropriate rules within ten (10) Business Days of the service of the notice of demand, the applicable rules shall be the American Arbitration Association's Commercial Arbitration Rules that are effective on the date of the notice of demand, exclusive of the requirement that the American Arbitration Association administer the arbitration.

14.1.3.3. In deciding the issue disputed, prior decisions by the Claims Administrator or other Special Master on analogous matters under the U.S. Program shall bind the other Special Master. Where an analogous matter has not been decided previously, the Special Master shall apply the substantive law specified in Section 22.3, without regard to that jurisdiction's choice-of-law rules.

14.1.4. The Parties agree that if any Special Master is, under applicable law, precluded from determining an issue otherwise to be determined by a Special Master pursuant to Section 14.1.3, then another Special Master will be chosen.

14.1.5. Notwithstanding provisions to the contrary, to the extent any suit, action or proceeding by either Party or any Person with respect to such matter under this

