**Page 1**

```
1         JUDICIAL ARBITRATION
       AND MEDIATION SERVICES (JAMS)
2
3  STEVEN M. JOHNSON, P.C.,  )
       Claimant,             )
4                            )
   V.                        )
5                            ) Ref No.
   WILLIAM DRAKE,            ) 1310021509
6      Respondent.           )
7
8
9
10
11         ARBITRATION HEARING
12         MONDAY, APRIL 4, 2016
13
14
15
16
17
18
19
20
21     Arbitration hearing, held at the offices of
22 JAMS, 8401 N. Central Expressway, Dallas, Texas,
23 commencing at 9:09 on the above date, before Terri
24 Garcia, CSR.
```

**Page 2**

```
1            A P P E A R A N C E S:
2  FOR THE CLAIMANT:
3    MS. JENNIFER MORRIS ANDREWS
     Wallach Andrews
4    2501 Parkview Drive
     Suite 303
5    Fort Worth, Texas 76102
     Phone: (817) 338-1707
6    E-mail: j.andrews@wallach-law.com
7  FOR THE RESPONDENT:
8    MR. ANDREW DAVICK
     MS. ASHLEIGH E. RASO
9    Meshbesher & Spence
     1616 Park Avenue
10   Minneapolis, MN 55404
     Phone: (612) 339-9121
11   E-mail: araso@meshbesher.com
12
   ALSO PRESENT:
13
     Mr. Tom Needham
14   Ms. Karin Cagle
     Mr. Lerone Landis
15   Mr. Steven M. Johnson
```

**Page 3**

```
1                    INDEX
2                                              PAGE
3  Appearances.......................................  2
4  Claimant's Opening Statement.....................  16
   Respondent's Opening Statement...................  18
5
   STEVEN M. JOHNSON
6
       Examination by Ms Andrews....................  22
7
   Reporter's Certificate........................... 214
8
```

**Page 4**

```
1              PROCEEDINGS
2       (Monday, April 4, 2016, 9:09 a.m.)
3            MR. DAVICK: Your Honor, as you know, we've
4  had, you know, multiple off the record -- I don't know
5  if you would call them off the record, but on phone
6  conversations regarding a variety of issues. The first
7  issue I want to address and just make sure we have a
8  record for it is to make clear, Your Honor, and I know
9  you've ruled on this in the past, but we've objected to
10 this forum. I wanted to make sure there was a record of
11 that.
12           THE COURT: Yes. Well, and there's an
13 order to that effect.
14           MR. DAVICK: I didn't know if there was
15 a --
16           THE COURT: We briefed that -- that was
17 briefed early on.
18           MR. DAVICK: And I appreciate that, Your
19 Honor.
20           THE COURT: There was an interim order, but
21 yes.
22           MR. DAVICK: Yeah. I just wanted to renew
23 that objection --
24           THE COURT: Okay.
```


EXHIBIT J

Page 5

MR. DAVICK: -- that the MDL forum was the proper forum. I know that it's denied, but I wanted to get that on the record.

THE COURT: Although my understanding is Ms. Yanni, as well, has yielded jurisdiction.

MR. DAVICK: Well, she canceled our arbitration. I don't know what she yielded.

THE COURT: She dismissed it.

MR. DAVICK: Correct. The second issue, Judge, was the issue that we discussed I believe on Friday at the pretrial, which was the issue of nondisclosure. It came to our attention Thursday via our own research that there was a failure to disclose the fact that The Johnson Law Firm was also presently in the process or going to begin the process of arbitrating with Your Honor. It had been disclosed to us through you, Your Honor, that Ms. Andrews had a pending arbitration. It was not disclosed that Mr. Johnson was, in fact, the client in that proceeding.

As a result of our objection and the discussions on Friday, Your Honor felt that that was not an issue, that you had consulted with legal counsel for JAMS and didn't feel that nondisclosure kept you from proceeding today at today's hearing.

Page 6

THE COURT: And as you're aware, I've withdrawn from the other arbitration.

MR. DAVICK: That is correct and I also wanted to make sure it was on the record, because there was a little bit of confusion that Your Honor was chosen by the parties in the other action. There's been some discussion whether it was court appointed or chosen by the parties.

THE COURT: Yeah, as I -- as best I know, because I'm not into that arbitration yet, I've conducted or made no rulings, but the parties agreed to me, but -- but the appointment was made by the federal court.

MR. DAVICK: The other issue, Your Honor, that I wanted to get on the record and I had some conversations with Mr. Needham this weekend on this particular issue, it had been brought to our attention that you had previously arbitrated a dispute for Mr. Johnson in the past.

THE COURT: Yeah, I disclosed that last year.

MR. DAVICK: Yes. And we have asked the other side just for the nature of what that dispute was and when it occurred, and they have refused such a

Page 7

disclosure to us. They said that is an issue for Your Honor, and --

THE COURT: Well, and I'm not here to testify.

MR. DAVICK: No, I understand that. I just want to make sure it's clear that there is a refusal to disclose, on the record.

THE COURT: Fine. I think by the way that the disclosure explained -- I think there's a time frame in that disclosure. If I recall, it was -- it -- our records go back five years and I think this was more than five and I think that's included in the disclosure, but I thought that was made last April.

MR. DAVICK: The -- the fact that you had a prior proceeding --

THE COURT: Uh-huh.

MR. DAVICK: -- was disclosed, the nature of it was not, and we just want to and, I mean, if they want to put on the record that they are not willing to provide the nature of that dispute, I'd like to get that on the record.

MR. NEEDHAM: Your Honor, it's my understanding from the JAMS rules that the duty of the parties and representatives are to disclose to the

Page 8

arbitrator anything that might be a problem or show bias, et cetera, to the arbitrator and that it is the arbitrator's duty to disclose or not disclose what the arbitrator feels is appropriate to disclose to all the parties.

THE COURT: I'm not -- I disclosed my part of it, and that's been a year ago. There's no secret about what it was. It's just I'm not going to turn this in to an inquisition of the arbitrator.

MR. NEEDHAM: I understand.

THE COURT: I made that a year ago. I'm disappointed that there hasn't been an exchange of information, but we're not here today to -- to quiz the arbitrator about a disclosure that he made a year ago.

MR. DAVICK: And I appreciate it. I was not actually asking Your Honor. I'm asking the other side to make the disclosure and I just want to make sure it's on the record --

THE COURT: Okay.

MR. DAVICK: -- that they have refused such a disclosure.

THE COURT: Fair enough.

MR. NEEDHAM: Fair enough.

MS. ANDREWS: And just on that, Your Honor,

Page 9

1 if I may?
2     THE COURT: And by the way, that -- it's a
3 confidential proceeding, and I -- it's unfortunate that
4 this has developed today as opposed to a year ago when
5 the disclosure was made. But be that as it may, I mean,
6 that's where we are. I mean, that -- this proceeding
7 today is -- is not about that and if that's a rabbit
8 trail, I don't want to -- I don't want us to follow it.
9 Go ahead.
10     MS. ANDREWS: My two points, Your Honor,
11 are that under 15(h) JAMS Rules, the parties are only
12 required to disclose circumstances that give rise to
13 justifiable doubt as to your impartiality or
14 independent, including bias, financial or personal
15 interest. I know that you're familiar with the rule.
16 And in my opinion, the fact that Your Honor arbitrated
17 another -- a previous arbitration involving Mr. Johnson
18 more than five years ago certainly doesn't meet that
19 criteria, and since this was disclosed to counsel, I
20 believe it was in 2014 --
21     THE COURT: Oh.
22     MS. ANDREWS: -- when the arbitration was
23 commenced.
24     THE COURT: You know, this thing has gone

Page 10

1 on so long, I thought it was only a year ago.
2     MS. ANDREWS: No, 2014. We respectfully
3 submit that there's been waiver under Rule 27.
4     THE COURT: Well, look, my belief is that
5 these issues of disclosure are not findings of fact that
6 I'm going to make. I mean, you can make a record of it
7 and then if -- if the case goes to a confirmation
8 hearing and it is a basis or a challenge for vacatur, I
9 assume some trial judge will address all of those
10 issues. I'm not here to rule on those and not here to
11 testify about them or make any decisions, but I do want
12 to give Mr. Davick an opportunity to say what he wants
13 to say on the record.
14     MR. DAVICK: Yeah, and Your Honor, and
15 that's what I -- I just wanted to make clear that there
16 was a nondisclosure of that information, it's their duty
17 and leave it at that so we have a record for later on.
18     THE COURT: All right. Now --
19     MR. DAVICK: One other point, your Honor,
20 if I may. Sorry, I know you want to get going on this
21 thing.
22     THE COURT: I do.
23     MR. DAVICK: And I want to travel, so one
24 issue, Your Honor, we would bring a motion -- and this

Page 11

1 is, again, for purposes of preservation. I anticipate a
2 denial. There had been a previous settlement in this
3 matter. There was a settlement agreement that had been
4 drafted. It has not been signed by either party. We
5 would simply be seeking a motion to enforce that
6 settlement agreement, but I'm sure they're going to say
7 it was repudiated, which it was not, but --
8     THE COURT: I don't know anything about it
9 and, frankly, I haven't thought anything about
10 settlement agreements because those are not admissible
11 as to my -- my decisions.
12     MR. DAVICK: I agree, Your Honor, but you
13 are the sole arbitrator at this point of law and fact
14 and so we wanted to --
15     THE COURT: Are you telling me that there
16 is a written settlement agreement?
17     MR. DAVICK: They drafted it.
18     THE COURT: Is it signed?
19     MR. DAVICK: They won't sign it. We have
20 an e-mail reflecting that they felt we repudiated the
21 settlement.
22     THE COURT: Are we talk -- are you making
23 some request to enforce an unsigned settlement
24 agreement?

Page 12

1     MR. DAVICK: Well, correct, Your Honor, it
2 was settled, they drafted a memorandum of understanding,
3 the settlement agreement. They indicated that we
4 repudiated it but, in fact, their e-mails disclose
5 otherwise.
6     THE COURT: Well, you can make whatever
7 record you want on it. I mean, it's -- it would be a
8 Rule 11 agreement, for example, unless it's signed. But
9 I -- I mean, I don't know what the circumstances of that
10 are, so I -- I mean, I don't know what you're asking me.
11     MR. DAVICK: I -- we would be asking --
12 seeking to enforce it as the sole arbitrator. For
13 example, Your Honor, if a settlement occurred and you
14 were a pending trial court judge, it would be before
15 Your Honor to seek enforcement of the said settlement
16 agreement.
17     THE COURT: If there was -- if I was a
18 trial judge and there was a settlement made and it
19 wasn't enforceable under Rule 11, it wouldn't be a
20 settlement. So, I mean, if you've got a motion and you
21 want to make some presentation on that now or -- or --
22     MR. DAVICK: Do you have the exhibit?
23     THE COURT: -- when you put on your case in
24 chief, that's up to you.

Page 13

MR. DAVICK: Yeah, Your Honor, I would like to introduce --

THE COURT: But I don't -- I'm not going to -- I don't want to start this arbitration proceeding with an enforcement of an unsigned settlement agreement. If you've got a document that you want to enforce as an affirmative defense or part of your case in chief, then I'm happy to do that, but I don't want to put the cart before the horse here.

MR. DAVICK: Maybe we can wait, Your Honor, until presentation of evidence.

THE COURT: I think that's -- I'm not suggesting if you think you've got some defense based on a settlement that you've -- that I'm not going to deprive you of that opportunity, but you've got to bring it at the proper time and I think they've got the initial burden, so they've got the floor.

MR. DAVICK: Fair enough.

THE COURT: Okay.

MR. DAVICK: Thank you, Judge.

THE COURT: Anything else?

MR. DAVICK: Nothing else.

THE COURT: Anybody want to make an opening statement? Are we -- where are we?

Page 14

MS. ANDREWS: I'm happy to. We have a very short one, Your Honor.

THE COURT: All right. Go ahead, please.

You know what, there is one other -- I'm not quite sure who's going to testify. I know there's a motion to exclude Ms. Cagle and there's some other -- but I -- I think I'd just like it if all six of you would raise your right hands.

(Witnesses were sworn.)

THE COURT: Good. Thank you. And just be sure and remind me to do the same for Mr. Drake. Go ahead.

MS. ANDREWS: Your Honor, I do have a question. Ms. Cagle is designated as an expert witness and she is present here. Could you invoke the rule?

THE COURT: You know, I'm going to let everybody that's seated here stay here. I'll let you make -- I'll let you make your motion. I've read it as it relates to Ms. Cagle. The only -- only -- I'll tell you where we're headed here. One lawyer, one witness. Beyond that it's not going to get any more complicated than that. I'll sort it out when I make the final ruling. That includes the motion for spoliation. You're welcome to present that but I'm going carry all

Page 15

of it.

So the only -- the only thing that I -- I think we need to do -- this -- this case is -- is almost ready to collapse under its own weight. I mean, this -- this one-day arbitration has taken a life of its own and I think it's good that we finally are able to resolve it hopefully through testimony today.

But one rule that I will expect everybody to adhere to, because we do have multiple lawyers, the issue of Ms. Cagle aside, whoever takes a witness, that's -- that's their witness. And whoever makes a motion, that's their motion, and whoever responds to it, they're on their own. So it's kind of "one riot, one ranger," if you follow me.

MS. ANDREWS: Absolutely, Your Honor, but that wasn't actually the basis of my objection.

THE COURT: I know it. I know it, but I wanted to get that out of the way because we're getting too many -- we've got -- we've got plenty of lawyers here and I don't want it to become some free for all.

MS. ANDREWS: Understood and I appreciate the clarification --

THE COURT: Okay.

MS. ANDREWS: -- but my -- my request --

Page 16

THE COURT: I'm not going to exclude Ms. Cagle, if that's where you're going.

MS. ANDREWS: From listening to testimony?

THE COURT: From this proceeding.

MS. ANDREWS: From listening to the testimony as an expert witness?

THE COURT: Uh-huh.

MS. ANDREWS: You are -- I just want to get that clear that you are not going to allow -- require her to not listen to the testimony.

THE COURT: I will not.

MS. ANDREWS: All right. Thank you, Your Honor.

CLAIMANT'S OPENING STATEMENT

MS. ANDREWS: Jennifer Andrews on behalf of Steve Johnson. This should be a straightforward breach of contract fee dispute. There's a valid contingency fee agreement. It was fully performed. Mr. Drake unilaterally terminated it without cause, certainly not without good cause. The new attorneys were placed upon notice of the lien and they declined to honor it, at which point the contract was in breach requiring enforcement of it. That's essentially our -- the case.

In an effort to avoid this contract, the

Page 209

1    MS. ANDREWS: First revision. We've not
2 been provided any other documentation.
3    THE COURT: So based -- and I'm just taking
4 this portion of the testimony now, but what I -- my
5 notes reflect is we've got first hip, which is the left
6 hip, we've got a Part A, three paid Part Bs, a pending
7 Part B, then we've got --
8    MS. ANDREWS: A revision -- re-revision.
9    THE COURT: We've got a second -- we've got
10 a second revision, Part A, but no Part Bs?
11    MS. ANDREWS: That's what we've been
12 provided.
13    THE COURT: Okay.
14    MS. RASO: I think you're confused, Your
15 Honor. There's no Part B to the re-revision. The
16 re-revision is a Part B. Is that where it is?
17    THE COURT: Well, maybe -- and that's maybe
18 just in the way that --
19    MS. RASO: Yeah.
20    THE COURT: -- that they're defining it?
21    MS. RASO: Sure.
22    THE COURT: Okay. Okay. Well, y'all will
23 clear that up, but -- okay. I'm following you. So now
24 we are on -- we are now on second hip --

Page 210

1    MR. JOHNSON: The right hip.
2    THE COURT: -- the right hip. Okay. I'm
3 with you.
4    MR. JOHNSON: So the right hip, Part A
5 award is 150,000. There's a spousal benefit of 1500,
6 and there's a common benefit fee withholding. And the
7 total settlement award payment is 142,410.
8    THE COURT: 142,010.
9    MR. JOHNSON: 142,410.
10    THE COURT: 410. Well, and that's going to
11 be Part A?
12    MR. JOHNSON: Yes, sir.
13    THE COURT: How much -- and I'm not -- I'm
14 not sure that it's all that critical, but I mean, if I
15 was smarter, I could do the math myself. But would you
16 happen to have access to what the common benefit
17 deduction was?
18    MR. JOHNSON: Yes, sir. It's $9,090, and
19 it is a deduction of both the Part A award and the
20 spousal benefit amount.
21    THE COURT: Okay. All right.
22    Q. (BY MS. ANDREWS) And at this point, is it
23 accurate to say that we have not received any
24 information about any pending Part B awards to the right

Page 211

1 hip?
2    A. I believe that's correct, yes.
3    Q. And were there any deductions for this award?
4    A. He -- the base award was 250,000. Because of
5 the latency or implant length of seven years, there was
6 a deduction and the result was that the award was
7 150,000 after that deduction. And that's the only
8 deduction.
9    Q. And so what is Exhibit 12 and 13, just for
10 closure purposes?
11    A. Exhibit 12 is the orange form. It's a form
12 that's compiled or it's submitted, and it's for the --
13 hold on -- yeah, this is the -- this is the orange form
14 that he filed and this is a form that he needs to file
15 that indicates the -- the lawsuit that's pending, as
16 well as the -- I believe this is the form that's filed
17 for the -- getting tired.
18    Q. Red form.
19    A. Yeah, with the red form. And I don't think all
20 of it's here, frankly.
21    Q. And what is Exhibit 13?
22    A. And 13 is the blue claim form, which is used
23 for lien resolution, wherein he is required to provide
24 all of the names of the potential lienholders so that --

Page 212

1 because in this settlement, one of the interesting
2 provisions of it was that the defendant agreed to pay
3 liens related to the treatment for complications and
4 revision of the device.
5    Q. What is 14?
6    A. This is the release, I believe, if I try to
7 read it. It's very difficult to see, but this is the
8 release of all claims.
9    Q. Significance of which is what?
10    A. Well, this is -- this is what he's going to
11 file that's going to -- as he enters into the
12 settlement, it's required, and that's what he's going to
13 do and release all his claims against any potential
14 defendants.
15    Q. And has, in fact, Mr. Drake entered into
16 this --
17    A. Yes.
18    Q. -- settlement?
19    A. Yes, he has. And the date of his signature is
20 4/13/2015.
21    Q. Okay.
22    MS. ANDREWS: Your Honor, at this point, I
23 think we probably need to conclude until we find another
24 date.

Arbitration Hearing - April 4, 2016
Steven M. Johnson, P.C. vs. William Drake

Page 213

1  THE COURT: Well, I hate to go through this
2  drill again.
3  THE REPORTER: Do y'all want to go off for
4  this part or stay on?
5  MR. DAVICK: Yeah.
6  MS. ANDREWS: Yeah.
7  THE COURT: Yeah, probably. I don't
8  think...
9  (Proceedings recessed at 4:26 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 214

1  REPORTER'S CERTIFICATION
2  I, TERRI GARCIA, Certified Shorthand Reporter
3  in and for the State of Texas, hereby certify that this
4  transcript is a true record of the arbitration
5  proceedings held in the foregoing matter on April 4,
6  2016.
7  I further certify that I am neither counsel
8  for, related to, nor employed by any of the parties or
9  attorneys in the action in which these proceedings were
10 taken; and, further, I am not a relative or employee of
11 any attorney of record in these proceedings, nor am I
12 financially or otherwise interested in the outcome of
13 these proceedings.
14 Certified to by me this 15th day of April,
15 2016.
16
17
   Terri Garcia, Texas CSR 6581
18 Expiration Date:  12/31/2016
19
20
21
22
23
24

Page 215

JUDICIAL ARBITRATION
AND MEDIATION SERVICES (JAMS)

STEVEN M. JOHNSON, P.C.,      )
    Claimant,                   )
                              )
V.                            )
                              ) Ref No.
WILLIAM DRAKE,                ) 1310021509
    Respondent.                 )

ARBITRATION HEARING, VOLUME 2
MONDAY, MAY 9, 2016

Arbitration hearing, held at the offices of JAMS, 8401 N. Central Expressway, Dallas, Texas, commencing at 8:59 a.m. on the above date, before Terri Garcia, CSR.

Page 216

APPEARANCES:

FOR THE CLAIMANT:

    MS. JENNIFER MORRIS ANDREWS
    Wallach Andrews
    2501 Parkview Drive
    Suite 303
    Fort Worth, Texas 76102
    Phone: (817) 338-1707
    E-mail: j.andrews@wallach-law.com

FOR THE RESPONDENT:

    MR. ANDREW DAVICK
    MS. ASHLEIGH E. RASO
    Meshbesher & Spence
    1616 Park Avenue
    Minneapolis, MN 55404
    Phone: (612) 339-9121
    E-mail: araso@meshbesher.com

ALSO PRESENT:

    Mr. Tom Needham
    Ms. Karin Cagle
    Mr. Steven M. Johnson

Page 217

INDEX

                          PAGE

Appearances..........................................216

STEVEN M. JOHNSON

    Continued Examination by Ms. Andrews............223
    Examination by Mr. Davick.......................285

Reporter's Certificate...............................515

Page 218

PROCEEDINGS
(Monday, May 9, 2016, 8:59 a.m.)

MS. ANDREWS: Your Honor, when we last concluded, we were in the process of discussing and walking through the notices of awards that Mr. Drake had to-date received --

THE COURT: Uh-huh.

MS. ANDREWS: -- from the settlements. And I'd like to conclude with a discussion concerning exactly how Mr. Johnson is calculating his attorney's fees from the awards that --

THE COURT: Okay.

MS. ANDREWS: -- from the notices to date. Marked as SMJ-A is a spreadsheet of the notices of awards annotated as to the particular exhibits. I have handwriting on those. I'm sorry. Those are -- I didn't -- you don't need to -- I mean, they're the same, but I didn't mean to write on yours, Your Honor. Here's a blank one. Sorry. I wrote on that. I apologize.

THE COURT: Okay.

MR. JOHNSON: I got it.

MS. ANDREWS: There we go. And in conjunction with that, we submitted a supplemental exhibit last week to the Court and to Meshbesher &

## Page 516

JUDICIAL ARBITRATION
AND MEDIATION SERVICES (JAMS)

STEVEN M. JOHNSON, P.C.,  )
    Claimant,           )
                        )
V.                          )
                        ) Ref No.
WILLIAM DRAKE,              ) 1310021509
    Respondent.         )

ARBITRATION HEARING, VOLUME 3
TUESDAY, MAY 10, 2016

Arbitration hearing, held at the offices of JAMS, 8401 N. Central Expressway, Dallas, Texas, commencing at 9:02 a.m. on the above date, before Terri Garcia, CSR.

## Page 517

**APPEARANCES:**

FOR THE CLAIMANT:

    MS. JENNIFER MORRIS ANDREWS
    Wallach Andrews
    2501 Parkview Drive
    Suite 303
    Fort Worth, Texas 76102
    Phone: (817) 338-1707
    E-mail: j.andrews@wallach-law.com

FOR THE RESPONDENT:

    MR. ANDREW DAVICK
    MS. ASHLEIGH E. RASO
    Meshbesher & Spence
    1616 Park Avenue
    Minneapolis, MN 55404
    Phone: (612) 339-9121
    E-mail: araso@meshbesher.com

ALSO PRESENT:

    Mr. Tom Needham
    Ms. Karin Cagle
    Mr. Steven M. Johnson

## Page 518

INDEX

                                           PAGE

Appearances.........................................517

STEVEN M. JOHNSON

    Continued Examination by Mr. Davick............520
    Further Examination by Ms. Andrews.............623
    Further Examination by Mr. Davick..............636

WILLIAM DRAKE

    Examination by Ms. Raso....................... 649
    Examination by Ms. Andrews.....................678
    Further Examination by Ms. Raso................725
    Further Examination by Ms. Andrews.............732

ANDREA DRAKE

    Examination by Ms. Raso....................... 740
    Examination by Ms. Andrews.....................752
    Further Examination by Ms. Raso................781
    Further Examination by Ms. Andrews.............782

KARIN CAGLE

    Examination by Ms. Raso....................... 786
    Examination by Ms. Andrews.....................810
    Further Examination by Ms. Raso................830

Reporter's Certificate..............................844

## Page 519

PROCEEDINGS
(Tuesday, May 10, 2016, 9:02 a.m.)

    MS. ANDREWS: May I discuss this.

    MR. DAVICK: Sure.

    MS. ANDREWS: Your Honor.

    THE COURT: Yo?

    MS. ANDREWS: Yesterday, Mr. Davick asked Mr. Johnson to find, if possible, the notice sent to the manufacturer that Mr. Johnson represented Mr. Drake in a product liability case, and this is it that you're looking at, Exhibit SNJ1-A.

    THE COURT: Okay.

    MS. ANDREWS: Dated March 12th, 2012. That's when it was faxed to the manufacturer. The letter's clearly dated March 10, spreadsheet is 3/12/12 --

    THE COURT: Okay.

    MS. ANDREWS: -- identifying Mr. Drake as a represented client in the DePuy ASR.

    THE COURT: Is somebody offering it, is that --

    MS. ANDREWS: I am offering this.

    MR. DAVICK: No objection, obviously, Judge.