UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Andrea K. Drake, et al.,                                Case No. 1:13-dp-20140

    Plaintiffs

    v.                                              MEMORANDUM OPINION

DePuy Orthopaedics, Inc., et al.,

    Defendants

This matter is before me on the Plaintiffs' motion to enforce the master settlement agreement and vacate the arbitration award (Doc. No. 7), Johnson's response (Doc. No. 10), Plaintiffs' reply (Doc. No. 11), Johnson's reply (Doc. No. 12), Johnson's supplemental memorandum (Doc. No. 16), and Plaintiffs' response (Doc. No. 17). On January 4, 2017, I heard oral argument on the pending motion. Also before me are Johnson's post-hearing supplemental brief (Doc. No. 24), and Plaintiffs' post-hearing supplemental brief (Doc. No. 25).

## I. MDL BACKGROUND

This case is one of many which comprise this multidistrict litigation involving the DePuy ASR hip device which was transferred to this Court in December 2010 by the Judicial Panel on Multidistrict Litigation:

> The actions share factual issues as to whether DePuy's ASR XL Acetabular Hip System, a device used in hip replacement surgery, was defectively designed and/or manufactured, and whether DePuy failed to provide adequate warnings concerning the device, which DePuy recalled along with another ASR device, the ASR Hip Resurfacing system, in August 2010.

*In re DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation,* Case No. 10-md-2197 (N.D. Ohio) (Doc. No. 1). In addition to this MDL, litigation began in numerous state courts including coordinated state court proceedings in California, New Jersey, and Illinois. My colleague, Judge David A. Katz, was assigned this litigation by the Judicial Panel on Multidistrict Litigation.

In January 2011, Judge Katz held a hearing to address initial matters pertaining to this MDL. (Doc. No. 7). He entertained presentations by 82 of the 95 applications seeing appointment to the plaintiffs' leadership. (Doc. No. 63). After the leadership was established (Doc. No. 71), and at the first official status hearing, the leadership detailed the efforts aimed at discovery, including development of an explant protocol. (Doc. No. 63). There was discussion by both sides regarding coordination with state courts, specifically California and New Jersey, as was done in Judge Katz's prior MDL. (*Id.*) Judge Katz advised there would be monthly meetings of the leadership to keep the litigation on track.

The leadership and their committees began their work in earnest and met regularly with the Court. By the middle of 2013, over 8,500 cases had been filed in this MDL docket with nearly 12,000 individual plaintiffs.[1] The leadership worked collaboratively with each other and the cooperating state courts to create "a singular work product[2] encompassing the document review, depositions, experts, trial strategies, preparation and exhibits" for use in those respective jurisdictions. (CMO 16, Doc. No. 620).

---

[1] In all, there were 10,054 cases filed in this MDL.

[2] At the November 19, 2013 hearing, lead defense counsel reported producing 77 million pages of documents, producing approximately 60 company and third-party witnesses for depositions conducted over 100 days, with those depositions totaling nearly 40,000 pages of transcripts and comprising approximately 1,000 hours. (Doc. No. 624 at pp. 10-11).

At a hearing on November 19, 2013, this Court along with state court judges from California, New Jersey, Illinois, and Maryland, announced the parties had reached a private, global settlement agreement. Judge Katz then appointed a Plaintiffs' Oversight Committee to:

> [A]ddress prospective resolution, build consensus, effectuate a fair settlement for all who may qualify under the terms of a private resolution agreement, and assist and oversee the program which would be developed as a result of any private resolution as well as interact with those federal and state courts having jurisdiction over cases relating to the ASR Hip matter and take all actions necessary and/or incidental to the fair resolution of claims of those individuals entitled to compensation under the terms of said private resolution agreement.

(*Id.* at pp. 2-3.)

In conjunction with the DePuy Master Settlement Agreement, the Court approved the appointment of a Claims Administrator and three Special Masters to provide review of the claims process as well as address disputes related to the settlement. (CMO No. 17, Doc. No. 636). One of those individuals named as a Special Master was Cathy Yanni. Special Master Yanni is affiliated with JAMS[3] and she also had some involvement with Mr. Drake's fee dispute, as will be discussed further in this opinion.

This settlement and subsequent settlements have resulted in resolution for thousands of claimants who had the ASR device implanted. By the summer of 2016, the total number of cases in the MDL was reduced to approximately 2,500. Sadly, Judge Katz passed away unexpectedly at the end of July 2016, and this docket was transferred to me on September 2, 2016. (Doc. No. 1079).

Having provided a brief background of the MDL, I now turn to the Plaintiffs' specific case.

---

[3] JAMS is a private alternative dispute resolution provider specializing in mediation and arbitration. JAMS, https://www.jamsadr.com (last visited July 31, 2017).

## II. THE DRAKE LITIGATION

Plaintiff William Drake, a Minnesota resident, received DePuy ASR implants in both hips on or before May 2008. As noted previously, DePuy recalled the ASR device in the late summer of 2010.

On January 24, 2012, Mr. Drake signed an attorney representation agreement to have Steven M. Johnson represent him in the DePuy litigation[4]. In accordance with this representation, Attorney Johnson secured authorizations from Mr. Drake and obtained a number of his medical records. Attorney Johnson also advised Mr. Drake to notify his office if a revision surgery were to occur.

On November 28, 2012, Andrea K. Drake, William Drake's wife, contacted Attorney Johnson's office to advise them of an upcoming revision surgery for her husband. She also indicated Mr. Drake would be securing other counsel to represent him in his claim. On November 30, 2012, Attorney Johnson filed a short-form complaint on behalf of Mr. and Mrs. Drake in the MDL. *William Drake v. DePuy Orthopaedics, Inc. et al.*, 1:12-dp-24036 (N.D. Ohio).

On December 5, 2012, Mr. Drake contacted Attorney Johnson's office to advise he had new counsel, Charles H. Johnson (no relation to Steven M. Johnson), a lawyer in Mr. Drake's resident state of Minnesota. Mr. Drake underwent a revision of his left hip on December 17, 2012.

In January 2013, Mr. Drake terminated Charles Johnson's representation and hired the firm of Meshbesher & Spence, which continues to serve as his counsel. (Doc. No. 10-3 at p. 7).

On January 24, 2013, the Meshbesher firm filed a suit for the Drakes in the District of Minnesota alleging injuries attributable to the ASR hip implants. That case was transferred by the

---

[4] The agreement is titled "**ATTORNEY REPRESENTATION AGREEMENT – DEPUY ASR HIP DEVICE.**" (Doc. No. 7-3).

Judicial Panel on Multidistrict Litigation to the Northern District of Ohio on February 6, 2013, and became part of this MDL. *Andrea K. Drake, et al. v. DePuy Orthopaedics, Inc., et al.*, 1:13-dp-20140.

In late March 2013, Attorney Johnson put the Meshbesher firm on notice of his fee lien.

On June 24, 2013, a stipulation of dismissal was filed in the initial lawsuit filed by Attorney Johnson and contained the following language:

> The parties further agree and stipulate that this dismissal shall have no effect on Plaintiff's pending case in the United States District Court, Northern District of Ohio, filed by the law firm of Meshbesher & Spence, Ltd. on January 24, 2013 (Case No. 1:30-dp-20140).
>
> The Parties further recognize that the Johnson Law firm has asserted a claim on any recovery the Plaintiff may make for any injuries related to the DePuy ASR for the full amount of all monies that JLF is entitled to under the terms of its contract with the Plaintiff and that this dismissal shall have no effect on those claims.

Case No. 1:12-dp-24036 (Doc. No. 3).

The Meshbesher firm submitted the Drakes' claims for resolution via the private settlement agreement in the MDL. At the time of the hearing on this matter, at least one settlement claim remained outstanding.

At the end of July 2013, Attorney Johnson initiated arbitration regarding the fee dispute with JAMS in Dallas, Texas. While that arbitration request was pending, Johnson filed suit against Drake seeking to compel arbitration in the Northern District of Texas on August 1, 2014. *Johnson v. Drake*, Case No. 4:14-cv-611 (N.D. Tex.).

By mid-August 2014, Drake entered an appearance in the JAMS arbitration with the arbitration formally commencing on August 27, 2014. Three months later in the Texas federal district court litigation, Judge John McBryde dismissed Johnson's federal case for lack of personal jurisdiction over Mr. Drake. (*Id.* at Doc. No. 22).

In 2015, the JAMS arbitrator, Hon. Glen Ashworth (ret.), established deadlines. Attempts at resolution delayed the start of the arbitration until 2016.

On February 16, 2016, Mr. Drake attempted to invoke the MDL arbitration process before Special Master Cathy Yanni through JAMS. Attorney Johnson promptly filed a Petition to Compel Arbitration in the Northern District of Texas, Dallas Division, against Mr. Drake on February 22, 2016. *Steven M. Johnson v. William Drake*, Case No. 3:16-CV-0094-D (N.D. Tex.).

On March 9, 2016, Special Master Yanni issued an order dismissing the matter before her as follows:

> 6. At the time this matter, JAMS Ref. No. 120004859, was referred to me as the Special Master, I was unaware and not informed of the arbitration already proceeding before Judge Ashworth.
>
> 7. I concur that I do not have jurisdiction over this matter and hereby dismiss JAMS Case Ref. No. 1200048059. Scheduling Order No. 1 in this matter is withdrawn.

(Doc. No. 10-6, p. 2).

Following Special Master Yanni's Order, on March 11, 2016, Johnson filed a Notice of Voluntary Nonsuit in his federal suit seeking to compel arbitration.

The arbitration before Judge Ashworth finally commenced on April 4, 2016. Following several days of hearings, Judge Ashworth issued an interim award in Johnson's favor with the final award issued on July 7, 2016. (Doc. No. 10-3). The final award to Johnson included:

| | |
|---|---:|
| Net 35% contingency fee from Mr. Drake's (Part A and B) ASR settlement | $196,612.50 |
| Attorney's fees (re: enforcement of the fee agreement) | $136,457.00 |
| <u>JAMS costs and arbitration costs</u> | <u>$20,145.47</u> |
| TOTAL | $353,214.97 |

On the heels of the final corrected award being issued, Attorney Johnson filed a third federal court case seeking to confirm the arbitration award, currently pending in the Northern District of Texas. *Steven M. Johnson v. William Drake*, Case No. 3:16-CV-1993-L (N.D. Tex.).

The Drakes filed the instant motion on June 22, 2016, seeking to enforce the Master Settlement Agreement and to vacate the arbitration award of Johnson's attorney fees.

As noted above, I held oral argument on these motions on January 4, 2017. In addition to counsel for the Drakes and Johnson, attorneys from the MDL leadership were present, including co-lead counsel Ellen Relkin.

### III. JURISDICTION

The issue here is this Court's jurisdiction, both personal and subject matter, over this attorney fee dispute between the Drakes and Attorney Johnson. The Drakes argue subject matter jurisdiction is conveyed and therefore, properly based upon the Master Settlement Agreement (MSA). Johnson disputes the applicability of the MSA and contends there is no subject matter jurisdiction as he is not a proper party to this litigation. There is also disagreement over whether this Court has personal jurisdiction over Attorney Johnson.

**A. Subject Matter Jurisdiction**

The jurisdiction of a multidistrict litigation transferee court is conferred through 28 U.S.C. § 1407 and generally pertains to pretrial matters. The jurisdiction of the transferee court is extended to the settlement process as the terms "coordinated and consolidated" contained in § 1407(a) have been deemed to include settlement negotiations in an MDL setting. *See In re Wilson*, 451 F.3d 161, 169-72 (3d Cir. 2006); *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 1999).

The initial settlement, announced by the MDL leadership in November 2013, applied to those claimants whose ASR implants were revised prior to August 31, 2013. At that hearing, the

7

leadership outlined the provisions of the agreement, the methodology for opting into the settlement process, as well as aspects of the settlement which they hoped would be a model for future MDLs. The settlement also addressed the negotiation and resolution of qualified lienholders[5] for the following reason:

> There are not a lot of settlements in which the patient going into the settlement will have a very good understanding of what they will net out of the settlement because they didn't – because now they don't have to worry about those types of liens. As I have already drafted, and it will come out soon, a point-by-point analysis relating to the liens. So hopefully the patients will have an opportunity to make sure that when they enter the program, they are going to know what they're going to get.

(Remarks by Co-Lead Counsel Steven J. Skikos, *In Re DePuy*, Doc. No. 624 at pp. 31-32).

The leadership stressed the need to provide clarity to the individual claimant about all aspects of the resolution in order to make an informed decision:

> We have another element of this settlement that is hopefully going to be a model. We believe strongly in the informed consent process. And the power of settlement belongs not – belongs to the individual patient. It is a truism that each of us believe the patient should have the right to know what the settlement terms are, what the offer is, what the categories of compensation are, and together with their lawyer make an individual decision. We have decided in this settlement, because there are over 1,000 law firms, maybe more, that we were going to make certain individuals with actual knowledge about this settlement available beyond this Settlement Oversight Committee so that the patients and their lawyers . . . go to actual people with actual knowledge of the case and knowledge of the settlement and get real answers.

(*Id.* pp. 30-31).

On the heels of this announcement, the Court entered an Order Regarding Registration of ASR Related Cases and Claims, which was prefaced by the following language:

> In order for this Court and the cooperating state court jurisdictions with coordinated proceedings pending in California (JCCP 4649), New Jersey (Master

---

[5] The MSA characterizes "Qualified Lienholders" as those "that have paid for, or asserted a lien or other claim for reimbursement for medical care associated with a Qualified Device." (MSA at Section 18.1.1).

Docket No. BER-L-3971-11) and Illinois (Case No. 10 L 10506) to cooperatively manage this litigation and to assist the Parties to effectuate the provisions of the private Final Settlement Agreement entered into between the MDL Plaintiffs' Executive Committee, Plaintiffs' Settlement Oversight Committee ("SOC"), and DePuy Orthopaedics, Inc. and it successors ("DePuy"), it is necessary to identify all filed and unfiled ASR related claims. . . .

(*In re: DePuy*, Doc. No. 637). This Order directed "[a]ll counsel for any ASR-related case pending in this Court" to provide information for their clients "including identifying all Interested Counsel in each filed case or unfiled claim." (*Id.* at ¶ 1).

The Order further defines "Interested Counsel" in the following manner:

> any Counsel (as defined) with an Interest (as defined) in a Person, or in a claim or case of a Person who has a Claim, filed or unfiled, Connected With ASR Hip Implants (as defined), Interested Counsel and the Primary Law Firm shall be jointly responsible for any Court Orders.

(*Id.* at ¶ 4. C).

This Order also defines the term "Interest" as:

> any interest in any ASR XL, ASR Resurfacing and/or Hemiarthroplasty claims, whether revised or unrevised, in which counsel (a) has an engagement or retainer agreement with such claimant; (b) is listed as counsel of record for a Plaintiff in any filed pleadings related to the ASR XL, ASR Resurfacing and/or Hemiarthroplasty claims, (c) has entered an appearance for such Plaintiff, or (d) would benefit directly or indirectly from any payment to settle any claim of such Plaintiff or Claimant in connection with ASR LX, ASR Resurfacing and/or Hemiarthroplasty claims; or (e) otherwise has any financial interest of any kind whatsoever in any ASR XL, ASR Resurfacing and/or Hemiarthroplasty claim.

(*Id.* at ¶ D).

Additionally, the term "Counsel" is defined as "a lawyer and/or law firm who represents such Person pursuant to a written agreement, or who has an Interest in such Person's Claim Connected with ASR Hip Implants." (*Id.* at ¶ E).

9

The forms attendant to the registration process also ask for information regarding legal representation, law firm information, interested counsel information, and second interested counsel information. (Doc. No. 637-1, pp. 4, 9-10). The November 19, 2013 settlement agreement and those forms are also located on BrownGreer's website for the U.S. ASR Hip Settlement at https://wwwusasrhipsettlement.com. As noted at the November 19th hearing, BrownGreer is a nationally recognized claims administration firm that specializes in settlement administration and was retained by the Plaintiffs' leadership to facilitate the settlement claims process. (Doc. No. 624 at pp. 34-35).

Under Section 14.1 of the MSA, the agreement references Submission to Authority of Claims Administrator and Special Masters:

> Except as specifically provided in this Agreement, *any* dispute that arises or otherwise in connection with (i) this Agreement and/or any U.S. Program Claim and/or (ii) any other Administrative Agreement under which disputes are agreed to be handled in the manner set forth in this Article 14, shall be submitted to the Claims Administrator who shall sit as a binding arbitration panel and whose decision shall be final, binding and Non-Appealable. . . .

(MSA, November 19, 2013, Section 14.1.2). (Emphasis added).

Attorney Johnson vigorously argues that nothing in the MSA confers subject matter jurisdiction over this fee dispute. Alternatively, he argues Mr. Drake waived jurisdiction when Special Master Yanni deferred to the ongoing JAMS arbitration before Judge Ashworth. Additionally, Attorney Johnson contends, if jurisdiction did exist in the present forum, the doctrine of laches precludes the Drakes from asserting any claim at this point in time. I disagree.

In general, the equitable doctrine of laches protects against "unreasonable, prejudicial delay in commencing suit." *SCA Hygiene Products Aktibolag, v. First Quality Baby Products, LLC*, 137 S.Ct. 954 (March 21, 2017). Laches is established by showing: (1) a "lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Kehoe Component Sales Inc. v.*

*Best Lighting Prods., Inc.*, 796 F.3d 576, 584 (6th Cir. 2015) (citation omitted). *See also Exxon Corp v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1082 (5th Cir. 1997) (citations omitted). Considerations in this analysis include the length of delay, seriousness of prejudice, the respondent's conduct or culpability, as well as the interval between the time the movant had knowledge of the asserted invasion of rights and legal challenges to that purported invasion. *Id.; Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*, 135 F.Supp.3d 970, 991 (D. Minn. 2015).

The Drakes were aware of Johnson's fee lien by the end of March 2013. The language in the June 24 dismissal of Mr. Drake's MDL case, stated Johnson's claim for any recoveries *related* to the DePuy ASR device. After the settlement was announced in November 2013, the Meshbesher law firm then proceeded to enroll Mr. Drake in the ASR settlement. Mr. Drake's enrollment for the Part A claim was completed on March 31, 2014.

The Drakes' counsel attempted to resolve the fee dispute and in his June 30, 2014 email: "I would like to resolve this dispute before my client receives his settlement proceeds, and believe getting one of the Special Masters involved makes the most sense. Please let me know if you have a preference as to Special Masters." (Doc. No. 7-7).

Attorney Johnson initiated arbitration proceedings through JAMS on July 31, 2014, and then filed his first suit in the Texas federal court to compel arbitration on August 1, 2014. Two weeks later and in response to Attorney Johnson's arbitration demand, Mr. Drake's counsel advised as to the status of the ASR settlement process and that his client was still awaiting a final determination as to his Part A award. (Johnson Hearing Exh. 2). Drake argued the demand for arbitration was premature as the ASR settlement process was still in progress. Additionally, Drake argued jurisdiction of the fee determination lay with the MDL court. (*Id.*) Drake attempted specifically to invoke the MDL process when in early 2016 he sought a JAMS arbitration with Special Master Yanni.

The timing of Mr. Drake's objections to the propriety of the Johnson-initiated arbitration do not constitute unreasonable delay in asserting his rights. I further find Attorney Johnson suffered no prejudice.

Prior to July 2014, Attorney Johnson filed motions to compel arbitration over similar attorney fee disputes in at least three other MDL cases. *Caiozzo v. DePuy*, 1:12-dp-20140 (Doc. No. 7); *Sandhoff v. DePuy*, 1:11-dp-22602 (Doc. No. 6); and *Erchinger v. DePuy*, 1:11-dp-23003 (Doc. No. 6). In response to those motions, Judge Katz subsequently issued an order referring the motions to compel to the Court Appointed Special Master Judge Marina Corodemus, for Findings of Fact to be recommended to the Court. Judge Katz noted the Court's concerns: "Given the disputes between counsel, and in review of the pleadings in these matters, the Court is concerned about the informed consent process." *Sandoff* at Doc. No. 8; *Erchinger* at Doc. No. 9, and *Caiozzo* at Doc. No. 9.

Judge Katz scheduled oral argument on those motions. At a hearing on July 18, 2014, counsel for Attorney Johnson informed the Court, "With regard to those four cases and our motions to compel arbitration, we've reached an *agreement* that the firm of Johnson law firm and each of the plaintiffs in those matters will be referred to arbitration, that will be with regard to any dispute arising from the interpretation, performance or breach of the plea agreement that's between Mr. Johnson's law firm and these four plaintiffs, and that it will be referred to a JAMS in Dallas Texas, that the parties will utilize a JAMS Arbitrators selection process." *In Re: DePuy*, (Doc. No. 772 at p. 2). (Emphasis added).

Attorney Johnson was certainly aware of the propriety of bringing an attorney fee dispute to the MDL Court's attention[6], and in light of Mr. Drake's arguments invoking the MDL court's

---

[6] In the case of *Dobbs v. DePuy*, Case No. 1:12-dp-23143, following his discharge by the plaintiff, the original attorney of record filed a motion to enforce a charging lien for attorneys' fees and expenses in the MDL case. (Doc. No. 12). The record is unclear as to why the Special Masters were not utilized but Judge Katz himself conducted the mediation and was unsuccessful. The reason for transferring the action to the Eastern District of Illinois was as follows: "The motion to enforce the lien is still pending. This Court cannot rule on that motion due to its involvement in the mediation process. A ruling by this court on that motion, in the undersigned's view, would be an inherent conflict and

jurisdiction, Mr. Johnson's arguments of possible prejudice ring hollow. Moreover, at the oral argument, Mr. Drake's counsel represented there was still one more issue pending in the ASR settlement process, that of an EIF[7] claim. Thus, Mr. Drake's ASR settlement process is not yet completed.

Attorney Johnson's waiver argument is also unavailing. Special Master Yanni's March 2016 ruling on jurisdiction was presumably premised upon deference to an ongoing arbitration, commenced in August 2014 before Judge Ashworth. At any rate, her determination is not ultimately binding on this Court, and the record is replete with Drake's assertions that the MDL is the proper forum for resolution of any fee dispute. Mere participation in Judge Ashworth's arbitration does not constitute waiver.

**B. Personal Jurisdiction**

Attorney Johnson also disputes this Court's personal jurisdiction over him. He contends he is neither a party nor has he been properly been served with summons of the litigation against him.

At the outset of this MDL, Attorney Johnson was one of 95 lawyers who applied for a leadership position in response to Judge Katz's December 7, 2010 Order to that effect. In his December 23, 2010 letter to the Court, Mr. Johnson advised Judge Katz that his firm represented over 200 DePuy ASR claimants. (Attachment A). Attorney Johnson entered his appearance as counsel in the lead MDL docket on January 19, 2011. (*In re: DePuy*, Doc. No. 57). At a January 20, 2011 hearing on applications for leadership positions, Attorney Johnson appeared and made a personal presentation for a leadership role before the Court. (*Id.*, Doc. No. 106 at pp. 63-64).

---

contrary to the interests of impartiality and justice." (Johnson Exh. 5). Consistent with the completion of pretrial procedures in an MDL case and having been unsuccessful at resolution of the fee dispute, transfer back to the district of original venue was appropriate.

[7]     Extraordinary Injury Fund as contained in Section 8.4 of the MSA.

According to the Court's electronic case filings, Attorney Johnson was listed as counsel of record in 246 ASR cases. At present, he is listed as counsel of record in at least 51 pending ASR cases.

Attorney Johnson's participation in this MDL through his representation in nearly 250 individual cases is sufficient to subject him to the personal jurisdiction of this Court. *See In re Ocwen Federal Bank FSB Mortg. Servicing Litigation*, 397 F.Supp.2d 957, 962 (N.D. Ill. 2005) (Illinois MDL transferee court had personal jurisdiction over Texas attorneys who represented a subset of the MDL class). As noted previously, Attorney Johnson moved to compel arbitration in at least three of his ASR MDL cases regarding attorney fee disputes identical to the one at issue. In those cases, he was designated as an interested party, such as he is in this litigation.

Finally, Attorney Johnson was not without notice of this fee dispute as is reflected in the certificate of service regarding the Drakes' motion herein. (Doc. No. 8). Significantly, Attorney Johnson chose to file the Drakes' claims in this MDL. It is difficult to imagine a more compelling record of voluntary submission to this Court's jurisdiction.

**C. Discussion**

At the January 2017 hearing, counsel for Attorney Johnson described the present situation as "a rather unique circumstance." (Doc. No. 23 at p. 24). He further argued the dispute in question "arises out of something that is outside of the MDL." (*Id.*, at pp. 24-25). I disagree.

Judge Edon Fallon, an experienced MDL judge, discussed the issue of attorney fees in MDLs:

> District courts argue that they necessarily retain the authority to examine attorneys' fees sua sponte because the attorneys' interests in this regard are in conflict with those of their clients. Further, the potential harm to the public's perception of the judicial process is especially acute in MDLs because of the large number of claimants involved. Disproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness. A significant justification for the MDL process is that it brings coordination, efficiency, and uniformity to an inherently, or at least

14

potentially, chaotic situation caused by the vast number of cases that make up many MDLs. Thus, instead of pursing individual discovery, filing individual motions, preparing individual trial plans, and incurring expenses time and time again, attorneys who participate in the MDL usually benefit, both in time and expense, from a uniform and efficient resolution procedure. The economies of scale should cut both ways.

Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 380 (2014) (footnotes omitted).

The Sixth Circuit recognizes the district court's "broad equity power to supervise the collection of attorneys' fees under contingent fee contracts." *Kalyawongsa v. Moffett*, 105 F.3d 283, 286 (6th Cir. 1997), quoting *Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir.), *cert. denied* 454 U.S. 836 (1981). In so doing, the appellate court agreed with other circuits that supplemental jurisdiction over attorney fee disputes, outside the common fund doctrine, is appropriate:

> Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.

*Id.* at 287-88. *See also In re Sulzer Hip Prothesis and Knee Prothesis Liability Litigation*, 290 F.Supp.2d 840, 849 (N.D. Ohio 2003).

Attorney Johnson availed himself of the MDL efficiencies for the benefit of his clients. He filed a direct action in this MDL on behalf of Mr. Drake. He filed hundreds of cases for other MDL plaintiffs. The Drakes do not contend Attorney Johnson expended no efforts on their behalf, rather their dispute centers on the proper forum for resolution of that dispute. As noted in the dismissal of Drake's initial MDL case, the fee agreement at issue is related to this MDL litigation and recovery.

Therefore, it is properly before this Court. In addition, Mr. Drake has an EIF claim which remains pending, thus the settlement process is not yet complete.

Of equal concern to this Court is the net effect of the arbitration award which "consumes the lion's share of a settlement effectuated through the MDL in this case." (Doc. No. 23 at p. 86). This impacts on the efficiencies of the MDL and the public perception of fairness by the legal profession and the judiciary. In the absence of an agreement between the parties to submit their dispute to a different forum, the proper forum to consider such disputes must and should rest with the MDL court.

## IV. CONCLUSION

For the reasons stated above, I find this Court has subject matter jurisdiction over this fee dispute as it is related to the MDL litigation and settlement. I further find this Court has personal jurisdiction over Attorney Steven M. Johnson.

Plaintiffs' motion to enforce the Master Settlement Agreement (Doc. No. 7) is granted. As I have determined this Court is the proper forum for this dispute, I find it unnecessary to address the motion to vacate the arbitration award as it has no binding effect on the resolution of fees in this case.

So Ordered.

                                                 s/ Jeffrey J. Helmick
                                                 United States District Judge