UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrea K. Drake, et al.,                                   Case No. 1:13-dp-20140

        Plaintiffs,

     v.                                                     MEMORANDUM OPINION
                                                 AND ORDER

DePuy Orthopaedics, Inc., et al.,

        Defendants.

## I.    INTRODUCTION

Plaintiffs William and Andrea Drake have filed a motion to vacate an arbitration award obtained by Steven Johnson, Plaintiffs' former attorney, from an arbitrator in Texas. (Doc. No. 7). Johnson has filed a competing motion to confirm the arbitration award. (Doc. No. 7; 3:17-dp-20085). I previously concluded I have subject matter and personal jurisdiction over this case and Johnson and granted Plaintiffs' motion to enforce the Master Settlement Agreement. (Doc. No. 30). The Sixth Circuit denied Johnson's appeal on that decision as premature, *Drake v. DePuy Orthopaedics, Inc.*, 757 F. App'x 449 (6th Cir. 2018), and this matter now is before me for the resolution of Plaintiffs' motion to vacate and Johnson's motion to confirm. For the reasons stated below, I deny Johnson's motion, and I grant Plaintiffs' motion to vacate the arbitration award.

## II.    BACKGROUND

The Sixth Circuit accurately and succinctly summarized the factual and procedural background of this dispute, and I will reiterate that summary here for consistency:

Plaintiff William Drake is a Minnesota resident. He is married to Andrea Drake, and has lived in Minnesota for approximately forty years. He received Articular Surface Replacement ("ASR") hip implants that were manufactured by DePuy Orthopaedics Inc., in both of his hips, at a hospital located in Minnesota. In 2010, DePuy recalled the ASR implants ("MDL Action") that Mr. Drake received. The Drakes learned of the recall through a television advertisement from a law firm representing persons who received DePuy ASR implants subject to this recall. Mrs. Drake called the number on the advertisement and thereafter began discussions with Johnson through his law firm. The Drakes did not know where the law firm was located when they initiated contact, but eventually learned that it was in Texas. Other than a brief layover in a Texas airport, Mr. Drake has never been to Texas.

Between September 28, 2010, and January 19, 2012, Johnson's law firm contacted the Drakes through calls and letters approximately fifty-seven times, which generally resulted in the firm leaving voicemails. During that time period, following six months of no direct contact from the Drakes, Johnson's law firm sent Mr. Drake a final letter, which stated that "[f]ailing to contact us may result in the closing of your file and the loss of your rights." . . . Five days later, on January 24, 2012, Mr. Drake signed the form contract (Attorney Representation Agreement, or "ARA") Johnson's firm had previously sent him. The ARA included an arbitration clause, stating that in the event of a dispute, arbitration would be held in Fort Worth, Texas.

On November 28, 2012, Johnson was informed by the Drakes that they intended to terminate their ARA with him, and secure different counsel. Shortly thereafter, Johnson filed a short-form complaint on behalf of the Drakes in the MDL Action in Ohio. Once the Drakes hired a local law firm to represent him, the new law firm filed a complaint in Minnesota, and the case was transferred to the Northern District of Ohio court handling this MDL. Before Johnson dismissed the complaint he filed on behalf of the Drakes, he put the Drakes' new attorneys on notice of his attorney's fee lien on any recovery from the Drakes' MDL lawsuit. Johnson dismissed the case he filed with the following stipulation:

> The parties further agree and stipulate that this dismissal shall have no effect on Plaintiff's pending case in the United States District Court, Northern District of Ohio, filed by the law firm of Meshbesher & Spence, Ltd. on January 24, 2013 (Case No. 1:30-dp-20140).
>
> The Parties further recognize that the Johnson Law firm has asserted a claim on any recovery the Plaintiff may make for any injuries related to the DePuy ASR for the full amount of all monies that [the Johnson Law Firm] is entitled to under the terms of its contract with the Plaintiff and that this dismissal shall have no effect on those claims.

. . .

> DePuy Orthopaedics, Inc. reached a settlement agreement with the plaintiff class in the MDL Action in November 2013, and the Drakes signed on to this settlement agreement shortly thereafter. The settlement agreement specifically outlines how disputes connected with the MDL Action are to be handled, which includes arbitration and the use of a Special Master and/or Claims Processor that have already been appointed through the MDL Action settlement process.
>
> In an effort to litigate the fee dispute arising out of the MDL Action, Johnson initiated a JAMS arbitration in Dallas, Texas on July 31, 2014. The next day, he filed an action in the Northern District of Texas, Fort Worth Division, to compel the Drakes to arbitrate in Texas. . . . The Fort Worth district court dismissed Johnson's action for lack of personal jurisdiction (in personam) over Mr. Drake. The arbitration continued, despite and over the Drakes' objections to both the individual arbitrator selected and to the Texas forum.
>
> On February 16, 2016, the Drakes initiated the ADR process regarding the parties' fee dispute, as dictated by the MDL Action settlement agreement, through Special Master Cathy Yanni of JAMS. Two days later, Johnson again moved to compel the Drakes to arbitration in Texas, this time filing in a Dallas district court. Special Master Yanni issued an order dismissing the Drakes' arbitration request on the basis that she did not have jurisdiction over the matter because it was already pending in a different forum with another JAMS arbitrator. Shortly afterwards, before the district court in Dallas issued any substantive rulings, Johnson voluntarily dismissed that action.
>
> The Texas arbitrator issued a final award in favor of Johnson on June 22, 2016 (later corrected for a typographical error and re-issued on July 7, 2016). Of the Drakes' settlement award, the arbitrator authorized over sixty-two percent to be distributed to Johnson, Johnson's attorneys, and the JAMS arbitration process. Johnson then filed another action in the district court in Dallas, where he moved that the court confirm the arbitration award. The Drakes then filed a motion to enforce the MDL Action settlement agreement and to vacate the arbitration award in the Ohio district court. The Ohio district court granted the Drakes' motion to enforce the settlement agreement and did not reach the motion to vacate the arbitration award. The next day, the Dallas district court sua sponte transferred Johnson's motion to confirm the arbitration award to be consolidated with the MDL case in the Ohio district court. Johnson timely appealed the Ohio district court's order.

*Drake*, 757 F. App'x at 450–52 (6th Cir. 2018) (footnotes and internal citations omitted) (alterations added).

The Sixth Circuit concluded it did not have appellate jurisdiction over Johnson's appeal because my earlier order did not resolve "the issue of how to deal with the arbitration award . . . ."

*Id.* at 453. The court of appeals remanded the case for further consideration of Johnson's motion to confirm and the Drakes' motion to vacate.

### III. ANALYSIS

Federal law "mandate[s] the enforcement of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Arbitration agreements are "irrevocable . . . save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 647 N.E.2d 1298, 1302 (N.Y. 1995) (Arbitration agreements are governed by "the accepted rules of contract law."); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003) ("[W]hen deciding whether the parties agreed to arbitrate, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).

The Drakes and Johnson entered into the ARA in January 2012. The ARA stated that Texas law applied to the terms of that agreement. (Doc. No. 10-4 at 1). While the ARA does not contain a provision governing amendments to the contract, Texas law plainly contemplates that parties to a contract may amend their written arbitration agreement through a subsequent writing. *See, e.g., J.M. Davidson, Inc.*, 128 S.W.3d at 227–29.

The Drakes and Johnson later became subject to another agreement – the 2015 ASR Settlement Agreement dated March 2, 2015 (the "2015 Settlement Agreement"), which modified and extended the initial ASR Settlement Agreement dated November 19, 2013 (the "2013 Settlement Agreement"). The Drakes settled their claims under the 2013 Settlement Agreement, though those claims still were active in the claims process when the 2015 Settlement Agreement took effect.

An MDL court's "inherent authority" to create and enforce mechanisms which "bring management power to bear upon massive and complex litigation" is well established. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010) (discussing a court's authority to assess

4

common benefit attorneys' fees against a pool of funds used to compensate MDL plaintiffs and attorneys) (quoting *In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972,* 549 F.2d 1006, 1012 (5th Cir. 1977)). So too is the requirement that a court "exercise supplemental jurisdiction over fee disputes that are related to the main action." *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir. 1997).

Johnson's claims, which are dependent upon a recovery by the Drakes "by way of settlement, judgment or otherwise," (Doc. No. 10-4 at 1), are squarely based upon the Master Settlement Agreement. The amount, scope, and timing of the Drakes' recovery under the U.S. Program (the private claim resolution program established by the 2013 Settlement Agreement and revised by the 2015 Settlement Agreement) is determined by the provisions of the 2015 Settlement Agreement. That agreement specifically provides that any dispute concerning the 2015 Settlement Agreement or "any U.S. Program Claim . . . shall be submitted to the Claims Administrator who shall sit as a binding arbitration panel and whose decision shall be final, binding and Non-Appealable." (2015 Settlement Agreement, § 14.1.2).

The fact that Johnson no longer represented the Drakes at the time they entered into the 2013 Settlement Agreement does not alter the conclusion that Johnson's claim for his alleged lien is governed by the terms of that and subsequent Settlement Agreements. Johnson represents numerous plaintiffs who settled their claims pursuant to one or more of the ASR Settlement Agreements. Moreover, even a plaintiff who is not a signatory to a contract containing an arbitration agreement "may be compelled to arbitrate if his claims are 'based on a contract' containing an agreement to arbitrate." *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 12 (Tex. App. 2016) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)); *see also Belzberg v. Verus Invest. Holdings Inc.*, 999 N.E.2d 1130 (N.Y. 2013) (holding a nonsignatory is bound by an

5

agreement containing an arbitration clause when the nonsignatory directly derives a benefit from the agreement).

In short, the Drakes and Johnson agreed to a contract which contained a binding arbitration provision – the 2015 Settlement Agreement. The subsequent arbitration Johnson initiated and pursued, however, did not comport with the parties' agreement. Permitting a party to any contract – to say nothing of one governing an area as broad and complex as the area this MDL addresses – to choose which provisions of that agreement it will abide by, and which it won't, simply is untenable. What is more problematic, in this case, is that it also violates federal law.

The Federal Arbitration Act provides that a party which has been "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. More precisely, to these circumstances, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method <u>shall</u> be followed . . . ." 9 U.S.C. § 5 (emphasis added). Parties to an arbitration agreement "may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis original).

The 2015 Settlement Agreement expressly provides a specific process for arbitration and identifies a particular arbitrator. The Texas arbitration neither followed that process nor used that arbitrator. "[A]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract <u>must be vacated</u>." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 263 (5th Cir. 2015) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673 (5th Cir. 2002)) (emphasis added).

Therefore, I vacate the Texas arbitration award and order the Drakes and Johnson to adhere to the arbitration procedures set forth in the 2015 Settlement Agreement, including arbitration

before the Claims Administrator or, if the Claims Administrator is unable to preside over the arbitration, before "one of the Special Masters who has not rendered any decision with regard to the matter at issue . . . ." (2015 Settlement Agreement, § 14.1.2 - 14.1.3).

## IV. CONCLUSION

For the reasons stated above, I deny Johnson's motion to confirm the arbitration award, grant the Drakes' motion to vacate the arbitration award, and order the parties to proceed with arbitration as contemplated by the 2015 Settlement Agreement.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge