# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrea K. Drake, et al.,                                   Case No. 1:13-dp-20140

                    Plaintiffs,

       v.                                                  MEMORANDUM OPINION
                                                              AND ORDER

DePuy Orthopaedics, Inc., et al.,

                    Defendants.

## I.    INTRODUCTION

Plaintiffs William and Andrea Drake have filed a motion to vacate an arbitration award

obtained by Steven Johnson, Plaintiffs' former attorney, from an arbitrator in Texas.  (Doc. No. 7).

Johnson has filed a competing motion to confirm the arbitration award.  (Doc. No. 7; 3:17-dp-

20085).  I previously concluded I have subject matter and personal jurisdiction over this case and

Johnson and granted Plaintiffs' motion to enforce the Master Settlement Agreement.  (Doc. No. 30).

The Sixth Circuit denied Johnson's appeal on that decision as premature, *Drake v. DePuy Orthopaedics,*

*Inc.*, 757 F. App'x 449 (6th Cir. 2018), and this matter now is before me for the resolution of

Plaintiffs' motion to vacate and Johnson's motion to confirm.  For the reasons stated below, I deny

Johnson's motion, and I grant Plaintiffs' motion to vacate the arbitration award.

## II.    BACKGROUND

The Sixth Circuit accurately and succinctly summarized the factual and procedural

background of this dispute, and I will reiterate that summary here for consistency:

Plaintiff William Drake is a Minnesota resident. He is married to Andrea Drake, and has lived in Minnesota for approximately forty years. He received Articular Surface Replacement ("ASR") hip implants that were manufactured by DePuy Orthopaedics Inc., in both of his hips, at a hospital located in Minnesota. In 2010, DePuy recalled the ASR implants ("MDL Action") that Mr. Drake received. The Drakes learned of the recall through a television advertisement from a law firm representing persons who received DePuy ASR implants subject to this recall. Mrs. Drake called the number on the advertisement and thereafter began discussions with Johnson through his law firm. The Drakes did not know where the law firm was located when they initiated contact, but eventually learned that it was in Texas. Other than a brief layover in a Texas airport, Mr. Drake has never been to Texas.

Between September 28, 2010, and January 19, 2012, Johnson's law firm contacted the Drakes through calls and letters approximately fifty-seven times, which generally resulted in the firm leaving voicemails. During that time period, following six months of no direct contact from the Drakes, Johnson's law firm sent Mr. Drake a final letter, which stated that "[f]ailing to contact us may result in the closing of your file and the loss of your rights." . . . Five days later, on January 24, 2012, Mr. Drake signed the form contract (Attorney Representation Agreement, or "ARA") Johnson's firm had previously sent him. The ARA included an arbitration clause, stating that in the event of a dispute, arbitration would be held in Fort Worth, Texas.

On November 28, 2012, Johnson was informed by the Drakes that they intended to terminate their ARA with him, and secure different counsel. Shortly thereafter, Johnson filed a short-form complaint on behalf of the Drakes in the MDL Action in Ohio. Once the Drakes hired a local law firm to represent him, the new law firm filed a complaint in Minnesota, and the case was transferred to the Northern District of Ohio court handling this MDL. Before Johnson dismissed the complaint he filed on behalf of the Drakes, he put the Drakes' new attorneys on notice of his attorney's fee lien on any recovery from the Drakes' MDL lawsuit. Johnson dismissed the case he filed with the following stipulation:

> The parties further agree and stipulate that this dismissal shall have no effect on Plaintiff's pending case in the United States District Court, Northern District of Ohio, filed by the law firm of Meshbesher & Spence, Ltd. on January 24, 2013 (Case No. 1:30-dp-20140).

> The Parties further recognize that the Johnson Law firm has asserted a claim on any recovery the Plaintiff may make for any injuries related to the DePuy ASR for the full amount of all monies that [the Johnson Law Firm] is entitled to under the terms of its contract with the Plaintiff and that this dismissal shall have no effect on those claims.

. . .

DePuy Orthopaedics, Inc. reached a settlement agreement with the plaintiff class in the MDL Action in November 2013, and the Drakes signed on to this settlement agreement shortly thereafter. The settlement agreement specifically outlines how disputes connected with the MDL Action are to be handled, which includes arbitration and the use of a Special Master and/or Claims Processor that have already been appointed through the MDL Action settlement process.

In an effort to litigate the fee dispute arising out of the MDL Action, Johnson initiated a JAMS arbitration in Dallas, Texas on July 31, 2014. The next day, he filed an action in the Northern District of Texas, Fort Worth Division, to compel the Drakes to arbitrate in Texas. . . . The Fort Worth district court dismissed Johnson's action for lack of personal jurisdiction (in personam) over Mr. Drake. The arbitration continued, despite and over the Drakes' objections to both the individual arbitrator selected and to the Texas forum.

On February 16, 2016, the Drakes initiated the ADR process regarding the parties' fee dispute, as dictated by the MDL Action settlement agreement, through Special Master Cathy Yanni of JAMS. Two days later, Johnson again moved to compel the Drakes to arbitration in Texas, this time filing in a Dallas district court. Special Master Yanni issued an order dismissing the Drakes' arbitration request on the basis that she did not have jurisdiction over the matter because it was already pending in a different forum with another JAMS arbitrator. Shortly afterwards, before the district court in Dallas issued any substantive rulings, Johnson voluntarily dismissed that action.

The Texas arbitrator issued a final award in favor of Johnson on June 22, 2016 (later corrected for a typographical error and re-issued on July 7, 2016). Of the Drakes' settlement award, the arbitrator authorized over sixty-two percent to be distributed to Johnson, Johnson's attorneys, and the JAMS arbitration process. Johnson then filed another action in the district court in Dallas, where he moved that the court confirm the arbitration award. The Drakes then filed a motion to enforce the MDL Action settlement agreement and to vacate the arbitration award in the Ohio district court. The Ohio district court granted the Drakes' motion to enforce the settlement agreement and did not reach the motion to vacate the arbitration award. The next day, the Dallas district court sua sponte transferred Johnson's motion to confirm the arbitration award to be consolidated with the MDL case in the Ohio district court. Johnson timely appealed the Ohio district court's order.

*Drake*, 757 F. App'x at 450–52 (6th Cir. 2018) (footnotes and internal citations omitted) (alterations added).

The Sixth Circuit concluded it did not have appellate jurisdiction over Johnson's appeal because my earlier order did not resolve "the issue of how to deal with the arbitration award . . . ."

*Id.* at 453. The court of appeals remanded the case for further consideration of Johnson's motion to confirm and the Drakes' motion to vacate.

### III. ANALYSIS

Federal law "mandate[s] the enforcement of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Arbitration agreements are "irrevocable . . . save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 647 N.E.2d 1298, 1302 (N.Y. 1995) (Arbitration agreements are governed by "the accepted rules of contract law."); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003) ("[W]hen deciding whether the parties agreed to arbitrate, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).

The Drakes and Johnson entered into the ARA in January 2012. The ARA stated that Texas law applied to the terms of that agreement. (Doc. No. 10-4 at 1). While the ARA does not contain a provision governing amendments to the contract, Texas law plainly contemplates that parties to a contract may amend their written arbitration agreement through a subsequent writing. *See, e.g., J.M. Davidson, Inc.*, 128 S.W.3d at 227–29.

The Drakes and Johnson later became subject to another agreement – the 2015 ASR Settlement Agreement dated March 2, 2015 (the "2015 Settlement Agreement"), which modified and extended the initial ASR Settlement Agreement dated November 19, 2013 (the "2013 Settlement Agreement"). The Drakes settled their claims under the 2013 Settlement Agreement, though those claims still were active in the claims process when the 2015 Settlement Agreement took effect.

An MDL court's "inherent authority" to create and enforce mechanisms which "bring management power to bear upon massive and complex litigation" is well established. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010) (discussing a court's authority to assess

common benefit attorneys' fees against a pool of funds used to compensate MDL plaintiffs and

attorneys) (quoting *In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972,* 549 F.2d 1006, 1012 (5th

Cir. 1977)). So too is the requirement that a court "exercise supplemental jurisdiction over fee

disputes that are related to the main action." *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir.

1997).

Johnson's claims, which are dependent upon a recovery by the Drakes "by way of

settlement, judgment or otherwise," (Doc. No. 10-4 at 1), are squarely based upon the Master

Settlement Agreement. The amount, scope, and timing of the Drakes' recovery under the U.S.

Program (the private claim resolution program established by the 2013 Settlement Agreement and

revised by the 2015 Settlement Agreement) is determined by the provisions of the 2015 Settlement

Agreement. That agreement specifically provides that any dispute concerning the 2015 Settlement

Agreement or "any U.S. Program Claim . . . shall be submitted to the Claims Administrator who

shall sit as a binding arbitration panel and whose decision shall be final, binding and Non-

Appealable." (2015 Settlement Agreement, § 14.1.2).

The fact that Johnson no longer represented the Drakes at the time they entered into the

2013 Settlement Agreement does not alter the conclusion that Johnson's claim for his alleged lien is

governed by the terms of that and subsequent Settlement Agreements. Johnson represents

numerous plaintiffs who settled their claims pursuant to one or more of the ASR Settlement

Agreements. Moreover, even a plaintiff who is not a signatory to a contract containing an

arbitration agreement "may be compelled to arbitrate if his claims are 'based on a contract'

containing an agreement to arbitrate." *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 12 (Tex.

App. 2016) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)); *see also Belzberg*

*v. Verus Invest. Holdings Inc.*, 999 N.E.2d 1130 (N.Y. 2013) (holding a nonsignatory is bound by an

agreement containing an arbitration clause when the nonsignatory directly derives a benefit from the agreement).

In short, the Drakes and Johnson agreed to a contract which contained a binding arbitration provision – the 2015 Settlement Agreement. The subsequent arbitration Johnson initiated and pursued, however, did not comport with the parties' agreement. Permitting a party to any contract – to say nothing of one governing an area as broad and complex as the area this MDL addresses – to choose which provisions of that agreement it will abide by, and which it won't, simply is untenable. What is more problematic, in this case, is that it also violates federal law.

The Federal Arbitration Act provides that a party which has been "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. More precisely, to these circumstances, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method <u>shall</u> be followed . . . ." 9 U.S.C. § 5 (emphasis added). Parties to an arbitration agreement "may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis original).

The 2015 Settlement Agreement expressly provides a specific process for arbitration and identifies a particular arbitrator. The Texas arbitration neither followed that process nor used that arbitrator. "[A]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract <u>must be vacated</u>." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 263 (5th Cir. 2015) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673 (5th Cir. 2002)) (emphasis added).

Therefore, I vacate the Texas arbitration award and order the Drakes and Johnson to adhere to the arbitration procedures set forth in the 2015 Settlement Agreement, including arbitration

before the Claims Administrator or, if the Claims Administrator is unable to preside over the arbitration, before "one of the Special Masters who has not rendered any decision with regard to the matter at issue . . . ." (2015 Settlement Agreement, § 14.1.2 - 14.1.3).

## IV.   Conclusion

For the reasons stated above, I deny Johnson's motion to confirm the arbitration award, grant the Drakes' motion to vacate the arbitration award, and order the parties to proceed with arbitration as contemplated by the 2015 Settlement Agreement.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

# EXHIBIT B

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540

Deborah S. Hunt          POTTER STEWART U.S. COURTHOUSE          Tel. (513) 564-7000
Clerk                    CINCINNATI, OHIO 45202-3988            www.ca6.uscourts.gov

Filed:  December 15, 2020

Robert Dolan Akers
3116 W. Fifth Street
Fort Worth, TX 761072140

Marla Broaddus
Michael Truesdale
Enoch Kever
7600 N. Capital of Texas Highway, Suite 200
Austin, TX 78730

Mr. Andrew L. Davick
Meshbesher & Spence
2519 Commerce Drive, N.W., Suite 120
Rochester, MN 55901

Mr. Derek Irwin Stewart
Meshbesher & Spence, 1616 Park Avenue
Minneapolis, MN 55404

> Re:  Case Nos. 19-4074/19-4075, *Andrea Drake, et al v. DePuy Orthopaedics, Inc., et al*
>      Originating Case Nos. : 1:13-dp-20140; 1:17-dp-20085

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Ms. Sandy Opacich

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0696n.06

Nos. 19-4074/4075

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

```
FILED
Dec 15, 2020
DEBORAH S. HUNT, Clerk
```

| | |
|---|---|
| In Re: DEPUY ORTHOPAEDICS, INC. ASR HIP IMPLANT PRODUCTS LIABILITY LITIGATION. | ) ) ) ) |
| ———————————————— | ) |
| **19-4074** | ) ) |
| ANDREA K. DRAKE; WILLIAM S. DRAKE, | ) ) |
|     Plaintiffs-Appellees, | ) |
|     v. | ) ) |
| DEPUY ORTHOPAEDICS, INC., et. al., | ) ) |
|     Defendants, | ) ) |
| STEVEN M. JOHNSON, d/b/a THE JOHNSON LAW FIRM, | ) ) ) |
|     Petitioner-Appellant. | ) ) |
| **19-4075** | ) ) |
| STEVEN M. JOHNSON, | ) ) |
|     Petitioner-Appellant, | ) ) |
|     v. | ) ) |
| WILLIAM S. DRAKE, | ) ) |
|     Respondent-Appellee. | ) ) |

On Appeal from the United States District Court for the Northern District of Ohio

**Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** These appeals involve the arbitration of a contingent fee dispute between an attorney and his former client after the client obtained a

settlement of his underlying claims through the DePuy ASR Hip Implant Products Liability

Litigation (MDL No. 2197).  Attorney Steven M. Johnson d/b/a The Johnson Law Firm, initiated

arbitration in Texas against his former client William Drake pursuant to their Attorney

Representation Agreement (ARA), which ultimately resulted in a final arbitration award in

Johnson's favor for more than $350,000.  Moving to vacate that award, Drake sought to force

Johnson to arbitrate their fee dispute anew before a Special Master appointed under the MDL's

Master Settlement Agreement (MSA).  The district court sided with Drake twice—once before

and once after we dismissed Johnson's first appeal for lack of jurisdiction.  *Drake v. DePuy

Orthopaedics, Inc.*, 757 F. App'x 449, 452 (6th Cir. 2018).

Johnson's latest appeals are from the district court's orders on remand: (1) denying

confirmation of the arbitration award in Johnson's favor; (2) vacating that arbitration award; and

(3) ordering the parties to arbitrate their fee dispute again pursuant to the MSA.  *Drake v. DePuy

Orthopaedics, Inc.*, No. 1:13-dp-20140, 2019 WL 4750608 (N.D. Ohio Sept. 30, 2019) (MDL);

*Johnson v. Drake*, No. 1:17-dp-20085 (Order R. 54) (N.D. Ohio Sept. 30, 2019) (Transferred

Motion to Confirm Award).  To be clear, the issue is not *whether* the parties agreed to arbitrate

any fee disputes between them under the express terms of the ARA—everyone accepts that they

did.  The question is whether it was error to vacate the arbitration award on the grounds that the

initial agreement to arbitrate was amended, modified, or otherwise superseded by the provisions

of the MSA.  Because the district court's reliance on a mix of contract principles, estoppel theory,

and inherent authority does not withstand scrutiny, we **REVERSE** and **REMAND** for further

proceedings consistent with this opinion.[1]

---

[1] Although judgment has not been entered in the Drakes' MDL case under 28 U.S.C. § 1291, an
appeal may be taken from orders "denying confirmation of an award" or "vacating an award," 9

# I.

Minnesota resident William Drake underwent bilateral hip replacement surgeries in 2007. The implants he received—DePuy Articular Surface Replacement (ASR) hip devices—were recalled in 2010. Many lawsuits followed and, by the end of 2010, the Judicial Panel on Multidistrict Litigation had ordered the transfer of the first of thousands of federal ASR hip implant actions to the Northern District of Ohio for coordinated or consolidated pretrial proceedings. *See* 28 U.S.C. § 1407(a) (providing that each action "be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated").

## A. Johnson's Representation

Drake's wife Andrea saw and responded to a solicitation from the Johnson Law Firm relating to the DePuy recall. Letters and calls were directed to the Drakes for more than a year, until a final warning letter prompted Drake to engage Johnson to represent him in January 2012. Under the Attorney Representation Agreement (ARA or Fee Agreement), Johnson would bring Drake's claims against the manufacturer and distributor of the ASR hip device and would receive a contingent attorney's fee of 40% of whatever was recovered "by way of settlement, judgment, or otherwise." The ARA specified that it would be governed by Texas law, contained an integration clause, and was silent regarding subsequent amendment or modification.

Significant for our purposes, Drake expressly agreed to "binding arbitration of any disputes between the client and the Firm." More specifically, Drake and Johnson agreed that "any dispute arising from the interpretation, performance, or breach of this Fee Agreement . . . shall be resolved

---

U.S.C. § 16(a)(1)(D)-(E). Also, judgment was entered in the action transferred from the district court in Texas, and an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3).

by final and binding arbitration conducted in Fort Worth, by any other arbitrator that The Firm

may choose."  The ARA did not otherwise specify the arbitrator or incorporate any arbitration

rules to govern such an arbitration.

Johnson represented Drake for less than a year.  In that time, Johnson notified DePuy of

Drake's ASR-related claims, obtained medical records, and waited for Drake's revision surgery to

be scheduled.  At the end of November 2012, the Firm was advised that Drake was terminating its

representation; Johnson filed a "short form" complaint in the MDL on Drake's behalf anyway; and

Drake retained as substitute counsel Minnesota Attorney Charles Johnson (no relation to Steven

Johnson).  Although the sequence of and justifications for those actions were contested in the

Texas arbitration proceeding, the fact that they occurred was not.[2]

Not long after terminating Johnson's representation, Drake underwent revision surgery and

changed counsel one last time.  The Drakes have been represented ever since by the Minnesota

law firm of Meshbesher & Spence, Ltd.—both in the MDL case and the fee dispute with Johnson.

B.  Drake's Settlement

A new complaint alleging the Drakes' ASR-related claims was filed in federal court in

Minnesota in early 2013.  That became the operative pleading after it was transferred to the

Northern District of Ohio for pretrial proceedings in the DePuy ASR Hip Implant Products

Liability Litigation.  *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) (noting that

"[c]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities").

That transfer called attention to the "short-form" complaint previously filed by Johnson on Drake's

---

[2] The arbitrator ultimately found that Drake did *not* have "good cause" to fire Johnson, which,
under Texas law, meant that Johnson was not limited to a *quantum meruit* recovery and was able
to enforce the contract and collect the full contingent fee once Drake recovered on the underlying
claim.  *See Mandell & Wright v. Thomas*, 441 S.W.2d 841 (Tex. 1969).

behalf.  Johnson stipulated to its dismissal, but not without asserting a contingent fee claim "for the full amount of all monies that JLF is entitled to under the terms of its contract with the Plaintiff and that this dismissal shall have no effect on those claims."

The MDL proceeded with extensive discovery conducted by lead counsel for plaintiffs and defendants, and, by mid-2013, the number of cases filed in the MDL docket exceeded 8,500. *Drake v. DePuy Orthopaedics, Inc.*, No. 13-dp-20140, 2017 WL 6502489, at *1 (N.D. Ohio Dec. 19, 2017).  DePuy and a committee of plaintiffs' attorneys (which did not include Johnson) reached a private global settlement agreement in late 2013.  The settlement—formalized as the Master Settlement Agreement (MSA)—created an "opt-in" program funded by DePuy for the settlement of the ASR-related claims, filed and unfiled, of eligible U.S. claimants who underwent revision surgery prior to August 31, 2013.  Under the MSA, eligible claimants (including Drake) could choose to settle by "enrolling" in the program and agreeing to have their claims decided in a private administrative process with the release of all claims against the defendants.

In particular, the MSA appointed three Special Masters "to oversee the administration of claims for benefits and to make final and binding determinations under this Agreement with the authority of an Arbitrator under the Federal Arbitration Act." (MSA § 12.4.2.)  The MSA provided for "final, binding and Non-Appealable" arbitration of "any dispute that arises under or otherwise in connection with . . . any U.S. Program Claim."  (MSA § 14.1.2.)  An arbitration would be initiated by serving a demand on the Special Master, and, unless the parties agreed otherwise, the arbitration would be governed by the American Arbitration Association (AAA)'s Commercial Arbitration Rules.  (MSA § 14.1.3.2.)

Through counsel, the Drakes enrolled in the MSA's settlement program in early 2014. Drake was approved for Part A and Part B settlement awards totaling $561,750, which triggered

Johnson's contingent fee claim.  Drake also filed a claim under the MSA's Extraordinary Injury

Fund (EIF), although it is not clear whether that claim is still pending.  The Drakes re-enrolled

after the MSA was modified and extended to cover U.S. claimants who had revision surgery prior

to January 31, 2015.  For our purposes, the relevant provisions of the 2013 MSA remained

unchanged in the 2015 MSA.[3]

### C. Arbitration of the Contingent Fee Claims

Drake's counsel proposed that the fee dispute be arbitrated before a Special Master under

the MSA.  Instead, Johnson initiated an arbitration with JAMS in Dallas, Texas.  Johnson also filed

a motion to compel arbitration, which was dismissed for lack of personal jurisdiction by the federal

court in Texas.  The JAMS arbitration proceeded over Drake's objections, and the arbitrator was

selected.  The arbitration hearing was delayed for settlement discussions, but a settlement was

never finalized.

So, in early 2016, Drake formally invoked the MSA's arbitration process and a JAMS

arbitration was referred to Special Master Cathy Yanni.  Johnson objected to the arbitration on

several grounds and also filed (and later dismissed) a second motion to compel arbitration in

federal court in Texas.  That detour did not last long, however, because Special Master Yanni

quickly dismissed the arbitration for lack of jurisdiction.  Johnson contends that the dismissal

should be understood as an implicit determination that the dispute was not arbitrable under the

MSA, although the brief order did not say that.  Instead, the order stated that the Special Master

had been "unaware and not informed of the arbitration already proceeding before Judge Ashworth"

in the Dallas JAMS proceeding.  The only reasons given are at least as likely to imply that the

---

[3] The district court noted that the MSAs and other forms are available on the website for the U.S.
ASR Hip Settlement.  *Drake*, 2017 WL 6502489, at * 6 (citing www.usasrhipsettlement.com).

dismissal was based on deference to the first-filed and still pending Dallas JAMS proceeding. *See Drake*, 757 F. App'x at 452 (describing this dismissal as based on lack of "jurisdiction over the matter because it was already pending in a different forum with another JAMS arbitrator").

The arbitration hearing was finally conducted in the Dallas JAMS proceeding. The arbitrator issued a final corrected arbitration award in Johnson's favor in July 2016. The arbitrator's written decision rejected Drake's defenses and counterclaims—including his claim of fraudulent inducement, his defense that the ARA was terminated for "good cause," and his challenges to the contingent fee on the grounds of forfeiture and unconscionability. After finding that Drake had breached the contract, Johnson was awarded: (1) a net contingency fee of 35% of the Part A and Part B settlement awards in the amount of $196,612.50 (as well as on any future EIF recovery); (2) a lien against Drake's recovery to the extent of that fee; and (3) contract damages for the attorney's fees and costs incurred in the arbitration in the amount of $136,457 and $20,145.47, respectively. Altogether, Johnson was awarded $353,214.97. That did not end the matter.

## D.   Federal Court Proceedings

Johnson filed a new action for confirmation of the award in the Texas federal court, while the Drakes countered with a motion filed in the Ohio MDL to vacate the arbitration award and enforce the MSA. The Texas action was later transferred to Ohio to be decided with the MDL proceedings. The Ohio district court decided to order the parties to arbitrate the fee dispute again under the MSA. *See Drake*, 2017 WL 6502489, at *9. Johnson appealed, but this court remanded with instructions for the district court to also decide the competing motions to confirm or vacate the arbitration award. *Drake*, 757 F. App'x at 454. On remand, the district court vacated the arbitration award because the arbitration "did not comport with the parties' agreement" and

Case Nos. 19-4074/4075                                                        8
*Drake v. Johnson, d/b/a The Johnson Law Firm*

ordered the parties "to adhere to the arbitration procedures set forth in the 2015 [Master] Settlement

Agreement." *Drake*, 2019 WL 4750608, at * 4. This appeal followed.

## II.

The Federal Arbitration Act restricts judicial review of an arbitration award to the statutory

grounds for vacating, modifying, or correcting an award under 9 U.S.C. §§ 10-11. *See Hall Street*

*Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Drake abandoned his argument for vacatur

based on partiality, 9 U.S.C. § 10(a)(2), but the FAA did not prevent Drake from otherwise

challenging the validity of the agreement to arbitrate the fee dispute after the award. *See PolyOne*

*Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 698 (6th Cir. 2019). Such a challenge could be

foreclosed by waiver if the party consented to the arbitration, but the district court found no waiver

here because the record was "replete with Drake's assertions that the MDL is the proper forum for

resolution of any fee dispute." *Drake*, 2017 WL 6502489, at *8. Johnson does not contest that

finding, so we assume that waiver does not apply here.

### A. Arbitrability

Arbitration agreements are placed "on equal footing with all other contracts," *Buckeye*

*Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and must be enforced "according to

their terms," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). This also means that

"parties may agree to have an arbitrator decide not only the merits of a particular dispute but also

'"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or

whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White*

*Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center*, 561 U.S. at 68-69). An agreement

to arbitrate questions of arbitrability may not be disregarded, but such a delegation requires "clear

and unmistakable" evidence that the parties agreed to have the arbitrator decide those issues. *In*

*re Automotive Parts Antitrust Litigation*, 951 F.3d 377, 382 (6th Cir. 2020) (quoting *Rent-A-Center*, 561 U.S. at 69 n.1).

As alluded to earlier, Johnson contends that the Special Master's dismissal of the second JAMS proceeding was a binding determination that the fee dispute was *not* arbitrable under the MSA. Assuming that the parties agreed to have JAMS Rules govern that arbitration, the Special Master would have been delegated the authority "to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Rule 11(b). (No. 17-dp-20085, Page ID # 549.) Otherwise, the MSA's incorporation of the AAA's Commercial Arbitration Rules could provide "clear and unmistakable" evidence of an agreement to arbitrate questions of arbitrability. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845-46 (6th Cir. 2020) (discussing incorporation of AAA rules which provide that the arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement").[4]

But, regardless of what may be implied from the Special Master's order of dismissal, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *In re Automotive Parts*, 951 F.3d at 382 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). As a result, even when issues of arbitrability have been committed to an arbitrator, courts must first decide any disagreement concerning "the formation of the parties' arbitration agreement." *Id*. at 383 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010)). Indeed, this court has

---

[4] The same cannot be said for the ARA, which did not incorporate similar rules to govern any arbitration. Nor does the ARA's provision for arbitration of any dispute arising from the "interpretation, performance, or breach of this Fee Agreement" provide comparably "clear and unmistakable" evidence that the parties agreed to have the arbitrator decide questions of arbitrability.

expressly refused "to merge challenges to the validity of an agreement ('whether it is legally

binding') with challenges to the existence of an agreement in the first instance ('whether it was in

fact agreed to' or 'was ever concluded')." *Id*. at 385 (citations omitted); *see also Blanton*, 962

F.3d at 848-49 (explaining that the court must decide a non-signatory's challenge to the existence

of an agreement to arbitrate even if the agreement incorporates the AAA Rules).

## B.  Agreement to Arbitrate

The starting place then is the existence of an arbitration agreement between the parties.

*See Taylor v. Pilot Corp.*, 955 F.3d 572, 576 (6th Cir. 2020).  State law governs the formation of

contracts, even though federal law determines whether the parties agreed to arbitrate questions of

arbitrability.  *Blanton*, 962 F.3d at 846-47.  The district court's decisions regarding the existence

of a valid arbitration agreement are reviewed *de novo*.  *In re Automotive Parts*, 951 F.3d at 381.

The glaringly undisputed fact is that Johnson and Drake expressly agreed in the 2012 ARA

that "any dispute arising from the interpretation, performance, or breach of this Fee Agreement . .

. shall be resolved by final and binding arbitration conducted in Fort Worth, by any other arbitrator

that The Firm may choose."  The district court concluded, however, that this was no longer the

operative agreement because the parties had agreed to arbitrate their disputes under the provisions

of the MSA.  The district court's analysis rests on a mixture of contract principles, estoppel theory,

and its inherent authority to manage complex litigation.  *Drake*, 2019 WL 4750608, at *3-4.  We

address each in turn.

## 1.  Contract Principles

The district court began with the unremarkable observation that Texas law recognizes that

parties may "amend their written arbitration agreement through a subsequent writing."  *Drake*,

2019 WL 4750608, at *3 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex.

2003)).  Here, however, there is no subsequent writing between the parties agreeing to amend or modify the arbitration provisions in the ARA.  Instead, the district court concluded that Drake and Johnson both "became subject to" the 2015 MSA (which extended the 2013 MSA) and, therefore, they had "agreed to a contract which contained a binding arbitration provision."  *Id*. at *3 and *4.  That is not the same as an agreement between them to arbitrate their contingent fee disputes before a Special Master pursuant to the MSA—rather than before an arbitrator of the Firm's choosing in Texas.  A closer look at the MSA is necessary.

Recall that the MSA is an agreement to establish a private settlement program, to which an eligible U.S. Claimant may "opt in."  Neither Drake nor Johnson are "parties" to the MSA itself— it is an agreement between DePuy and a committee of plaintiffs' attorneys (that did not include Johnson).  The Drakes argue that the fee dispute with Johnson is arbitrable under the MSA, which provides for arbitration of "any dispute that arises under or otherwise in connection with . . . any U.S. Program Claim."  (MSA § 14.1.2.)  But the Drakes are wrong to suggest that this definition of *what* disputes are arbitrable is an answer to the distinct question of *who* has agreed to arbitrate such disputes.  *See, e.g.*, *In re Automotive Parts*, 951 F.3d at 385.

The MSA actually sheds light on *who* agreed to submit such disputes to arbitration in the preceding subsection:  "Each Party, and by submitting an Enrollment Form and Release, each Enrolling U.S. Program Claimant and Enrolling Counsel, agrees that authority over the process . . . resides with those Persons appointed pursuant to this Agreement to exercise that authority in making the determinations with respect to claims submitted to the U.S. Program to do so with the authority of Arbitrators under the Federal Arbitration Act."  (MSA § 14.1.1.)  In other words, it is the enrollment that operates as consent to the dispute resolution process with respect to that enrolled U.S. Program claim.  As an enrolling claimant, Drake certainly consented to the

arbitration process for any dispute arising under or in connection with *his* U.S. Program claim. While Johnson enrolled *other* claimants in the settlement program and would be bound to arbitrate disputes arising under or in connection with *those* U.S. Program claims, Johnson was not Drake's enrolling counsel (and did not represent him at any time after the MSA was approved). Although Johnson was *an* enrolling counsel for *other* U.S. Program claimants, that did not contractually bind Johnson to arbitrate disputes vis a vis Drake's U.S. Program claim.

Nor does the district court's passing citation to *Branch Law Firm LLP v. Osborn*, 532 S.W.3d 13-18 (Tex. App. 2016), support a contrary conclusion. Unlike here, the MSA in that case settled all of the Avandia claims belonging to clients of the "Participating Law Firms"; was signed by Turner Branch, as a member of the Lead Participating Law Firm, on behalf of all "Participating Law Firms"; and expressly bound "Each Participating Law Firm, including all its current and future attorney members of or affiliated with each firm," to the terms and conditions of the MSA. *Id.* at 15 and 16. Those terms included an express agreement to arbitrate disputes, including those "between or among Participating Law Firms and/or members of Participating Law Firms arising out of or in connection with this Agreement." *Id.* at 16. Because Osborn was an attorney employed as an associate of a Participating Law Firm, he was contractually bound under agency principles to the terms and conditions of the MSA—including the arbitration provision. *Id.* at 18.

Section 14.1 of the MSA does not establish that Johnson and Drake amended their prior agreement to arbitrate any fee disputes under the ARA. Nor have the Drakes identified any other contractual basis that would bind Johnson to arbitrate his contingent fee claims under the MSA.

### 2. Direct Benefits Estoppel

The district court also invoked the doctrine of "direct benefits estoppel," which is a type of equitable estoppel that applies in the arbitration context. *See In re Kellogg Brown & Root, Inc.*,

166 S.W.3d 732, 739 (Tx. 2005). "In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement with an arbitration clause." *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 637 (Tx. 2018). But Johnson sought to enforce the terms of the Fee Agreement—not the MSA.

"A person who has not agreed to arbitrate may nevertheless be compelled to do so when the person 'seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision.'" *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n.2 (Tx. 2009) (quoting *In re Kellogg Brown & Root*, 166 S.W.3d at 741). The district court pointed out that Johnson's fee claims are "dependent upon a recovery by the Drakes," which, in turn, is "squarely based upon the Master Settlement Agreement." *Drake*, 2019 WL 4750608, at *3. Even so, Johnson's contingent fee claims did not seek to enforce any terms of the MSA against Drake.

The district court also relied on the fact that Johnson had represented numerous *other* plaintiffs who settled *their* ASR-related claims "pursuant to one or more of the ASR Settlement Agreements." *Id*. at *4. The fact that he represented *other* plaintiffs in *other* MDL cases is not a direct benefit for purposes of this estoppel doctrine. And, to the extent that Johnson's contingent fee claim may have derived indirect benefits from the MSA, the MSA required a "holdback" of 5% of attorney's fees from the settlement award for the common benefit fund. (MSA § 4.1.8.)

### 3. Inherent Authority

The district court also made passing reference to the "MDL court's 'inherent authority' to create and enforce mechanisms which 'bring management power to bear upon massive and complex litigation.'" *Drake*, 2019 WL 4750608, at *3 (quoting *In re Vioxx Prods. Liability Litigation*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010)). The mechanism adopted in *In re Vioxx* involved the MDL court's assessment of common benefit attorney's fees to compensate the lead

counsel's work in the MDL.  The MSA in this case employed a similar common benefit fund mechanism, but that was not challenged by the competing motions to confirm or vacate the arbitration award.

"[A]n MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL." *In re Nat'l Prescription Opiate Litigation*, 956 F.3d 838, 841 (6th Cir. 2020).  The coordination of effort in the MDL here illustrates the advantages that MDL litigation can offer.  "But the law governs an MDL court's decisions just as it does a court's decisions in any other case." *Id*. at 844.  For example, because § 1407 only authorizes transfers for pretrial proceedings, the Supreme Court held that an MDL court could not transfer such a case to itself for trial under 28 U.S.C. § 1404. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998).

The district court's power to compel arbitration under the MSA is no greater in the MDL context than in any other case.  Substantive law dictates that "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *In re Automotive Parts*, 951 F.3d at 383 (citation omitted).  It was error in this case to find that the parties' express agreement to arbitrate under the ARA was subsequently amended, modified, or otherwise superseded by the arbitration provisions of the MSA.

*            *            *

The district court's orders denying confirmation and vacating the arbitration award in Johnson's favor are **REVERSED** and the cases are **REMANDED** for further proceedings consistent with this opinion.

          **CLAY, Circuit Judge, dissenting.** This appeal raises the rather unusual question of how

a dispute is to be arbitrated, rather than the more commonplace issue of arbitrability per se. The

parties agree that an arbitrator must decide to what extent, if any, an attorney is entitled to a fee

contingent on his former client's settlement in a multi-district litigation ("MDL"). However, for

over six years, in four federal cases and two arbitrations, as well as for the second time before this

Court, that attorney and the client who terminated him in 2012 have vigorously litigated whether

the applicable arbitration procedures are determined by reference to their bilateral Attorney

Representation Agreement ("ARA") or a Master Settlement Agreement ("MSA") reached in the

MDL.1 The district court did not err in concluding that the attorney consented to arbitrate disputes

under the MSA or that his claim for a contingent fee was encompassed by that agreement. The

majority holds otherwise and concludes that, because the attorney did not represent his former

clients when they entered into the MSA, he did not consent to arbitrate this dispute under it.

Because that reasoning contravenes the explicit terms of the MSA, I respectfully dissent.

**I.      Background**

          William S. Drake and his wife Andrea K. Drake ("the Drakes") retained attorney Steven

M. Johnson to represent them in claims relating to William's articular surface replacement

("ASR") hip implant.2 William underwent his hip replacement in or before 2008. The

manufacturer, DePuy Orthopaedics, recalled the ASR hip in 2010 due to widespread failures of

---

[1] All references to the MSA are to the 2015 MSA, rather than the 2013 version, which the majority recognizes is unchanged for the issues relevant to this appeal. Citations are to the complete copy available at the website indicated by the district court, www.usasrhipsettlement.com. *Drake v. DePuy Orthopaedics, Inc.* ("*Drake* I"), Case No. 1:13-dp-20140-JJH, 2017 WL 6502489, at *6 (N.D. Ohio Dec. 19, 2017).

[2] While it appears that only William was a party to the ARA, William and Andrea are referred to collectively in the district court's order, and that practice is followed here.

the device. Numerous suits followed, and the Judicial Panel on Multidistrict Litigation centralized the actions involving the recalled devices in the Northern District of Ohio.

Johnson was hired by the Drakes in January 2012 pursuant to an Attorney Representation Agreement. The engagement was limited to claims relating to the DePuy ASR hip device and provided that Johnson would be compensated by a 40% contingent fee, exclusively out of a share of the recovery, if any, "by way of settlement, judgment or otherwise . . . ." (ARA, R. 10-4, Page ID #267.) 3 Johnson was granted a lien on the ASR cause of action, and the parties agreed that "any dispute arising from the interpretation, performance, or breach of the" ARA "shall be resolved by final and binding arbitration conducted in Fort Worth, by any other arbitrator that The Firm may choose." (*Id.*) The ARA was signed after approximately fifty-seven calls and letters to the Drakes over nearly sixteen months by Johnson's law firm. The last communication sent by Johnson stated "[f]ailing to contact us may result in the closing of your file and the loss of your rights." (Corr. Final Award, R. 10-3, Page ID #252.)

Less than a year later, the Drakes terminated Johnson's representation and retained other counsel. On November 28, 2012, Andrea called Johnson's law firm to express some doubts about maintaining their representation and explain that the Drakes might hire another lawyer. On November 30, 2012, Johnson filed a document captioned as a "Short Form Complaint for DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation," in the Northern District of Ohio. That same day, Johnson was notified that the Drakes had hired another attorney to represent them in connection with ASR hip claims. Johnson responded to the Drakes' new counsel by giving notice of a claimed lien of 40% of any amount recovered in the DePuy suit. The Drakes' subsequent counsel filed an ASR hip case against DePuy and related entities on January 24, 2013.

---

3 Citations to the district court record ("R.") refer to Case No. 1:13-dp-20140-JJH (N.D. Ohio).

The case was transferred to the Northern District of Ohio for MDL consolidated proceedings. The action initiated by Johnson on the Drakes' behalf was dismissed pursuant to stipulation on June 26, 2013. The parties "recognize[d] that the Johnson Law firm [*sic*] has asserted a claim on any recovery [the Drakes] may make for any injuries related to the DePuy ASR for the full amount of all monies that JLF is entitled to under the terms of its contract with [the Drakes] and that this dismissal shall have no effect on those claims." (Stipulation of Dismissal, R. 11-2, Page ID #361.)

A global settlement was reached between DePuy and a committee of plaintiffs' attorneys in November 2013. *Drake v. DePuy Orthopaedics, Inc.* ("*Drake* II"), 757 F. App'x 449, 451 (6th Cir. 2018). The Drakes joined this settlement shortly thereafter. *Id.* They settled a portion of their suit against DePuy for $561,750, and an Extraordinary Injury Fund claim is still possibly outstanding. *Id.* at 452 n.7.

As early as June 30, 2014, the Drakes' current counsel proposed to resolve the dispute over Johnson's contingent fee claim according to the arbitration procedures provided in the MSA. Johnson refused. Instead, on July 13, 2014, he initiated an arbitration with JAMS, a private alternative dispute resolution provider, in Dallas pursuant to the ARA ("Dallas arbitration"), and the next day filed a suit to compel arbitration in the Northern District of Texas. The federal suit was dismissed for lack of personal jurisdiction on November 25, 2014. In early 2016, the Drakes initiated an arbitration pursuant to the terms of the MDL MSA with Special Master Cathy Yanni. Special Master Yanni was a member of JAMS, like the Dallas arbitrator, and dismissed the matter upon being informed of the ongoing JAMS proceeding on March 9, 2016.[4] Shortly thereafter,

---

[4] Johnson argues that implicit in Special Master Yanni's dismissal is a binding determination that that his claims do not come within the scope of the MSA. However, Special Master Yanni's order makes no reference to the MSA, and instead appears to base the jurisdictional determination entirely on the fact that another JAMS arbitration, the Dallas arbitration, was already proceeding. *See Drake* II, 757 F. App'x at 452.

Johnson dismissed another suit to compel arbitration that he had filed in the Northern District of Texas.

On June 22, 2016, the Dallas arbitrator found in favor of Johnson and awarded him a net 35% contingency fee from the Drakes' DePuy settlement awards in the amount of $196,612.50, 35% of any future recovery, a lien on recovered claims, attorney fees in the amount of $136,457, and arbitration costs in the amount of $20,145.47. The same day, the Drakes filed a motion in the Northern District of Ohio to enforce the MSA and vacate the award. On July 7, 2016, Johnson filed another suit in the Northern District of Texas, this time to confirm the arbitration award. On December 20, 2017, the district court for the Northern District of Texas transferred Johnson's latest case to the Northern District of Ohio for possible consolidation with the Drakes' pending suit.

Just the day prior, on December 19, 2017, the district court had granted the Drakes' motion to enforce the MSA and had declined to address their motion to vacate the arbitration award. *Drake I*, 2017 WL 6502489, at *9. Johnson appealed that decision, but we found we lacked jurisdiction because there was no final order under 28 U.S.C. § 1291 or an interlocutory order appealable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(E). *Drake II*, 757 F. App'x at 452–53. We directed the district court to consider Johnson's application to confirm the arbitration award and the Drakes' motion to vacate the same. *Id.* at 453–54.

In a December 30, 2019 memorandum opinion and order the district court denied Johnson's motion to confirm the Dallas arbitration award, granted the Drakes' motion to vacate the same, and directed the parties to pursue arbitration pursuant to the MSA. *Drake v. DePuy Orthopaedics, Inc.* ("*Drake III*"), Case No. 1:13-dp-20140-JJH, 2019 WL 4750608, at *4 (N.D. Ohio Sept. 30, 2019). Johnson timely appealed.

## II.    Discussion

This Court reviews findings of fact for clear error and questions of law de novo in appeals of district court decisions either vacating or confirming an arbitrator's award under the FAA. *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 599 (6th Cir. 2016). A district court must issue an order confirming an arbitrator's award "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§] 10 and 11 . . . ." 9 U.S.C. § 9. Section 10 provides the exclusive grounds for vacatur under the FAA. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). As the majority recognizes, the Drakes have abandoned their argument for vacatur on the basis of partiality under § 10(a)(2). Since there is no allegation of fraud, § 10(a)(1), or arbitrator misconduct, § 10(a)(3), the award in this case may be vacated only if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

As the Supreme Court has recognized, "the first principle that underscores all of our arbitration decisions [is that a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted). As the majority correctly recognizes, neither the Drakes nor Johnson were signatories to the MSA itself—it was an agreement between DePuy and a committee of plaintiffs' attorneys of which Johnson was not a member.[5] However, the MSA also provides that certain other parties may agree to submit disputes to arbitration as delineated in that agreement. The relevant provision provides:

> Each Party [i.e., DePuy and plaintiffs' counsel committee] and, by submitting an Enrollment Form and Release, each Enrolling U.S. Program Claimant and

---

[5] Johnson had applied to the district court for an appointment to the committee.

> Enrolling Counsel, agrees that authority over the process contemplated by the U.S. Program, including any Claims submitted under the U.S. Program, resides with those Persons appointed pursuant to this Agreement to exercise that authority, as such authority is specified in this Agreement and that the Claims Administrator, Claims Processor and Special Masters in making the determinations with respect to claims submitted to the U.S. Program do so with the authority of Arbitrators under the Federal Arbitration Act and their decision, except as subject to review under the Agreement, are final, binding, and Non-Appealable.

(MSA § 14.1.1)

Both the Drakes and Johnson qualify under this section and are therefore required to submit qualifying disputes to the arbitrators designated under the terms of the MSA. Evidence in the record shows that the Drakes submitted a release of claims and enrolled in the U.S. Program (i.e., the settlement). Accordingly, they qualify as "Enrolled U.S. Program Claimants," as defined by MSA § 1.2.25.2. Similarly, Johnson is an "Enrolling Counsel" under the MSA since that term is defined as "the Primary Law Firm or other Counsel who files an Enrollment Form on behalf of any" claimant. (MSA § 1.2.26)[6] The district court found "[t]he fact that Johnson no longer represented the Drakes at the time they entered into the 2013 Settlement Agreement does not alter the conclusion that Johnson's claim for his alleged lien is governed by the terms of that and subsequent Settlement Agreements. Johnson represents numerous plaintiffs who settled their claims pursuant to one or more of the ASR Settlement Agreements." *Drake* III, 2019 WL 4750608, at *4. Under the terms of the MSA, it is irrelevant that Johnson did not enroll the Drakes in particular. Therefore, Section 14.1 of the MSA establishes that Johnson and the Drakes both agreed "that authority over the process contemplated by the U.S. Program, including any Claims submitted under the U.S. Program, resides with those Persons appointed pursuant to this

---

[6] "Counsel" is defined as "with respect to any particular Person, a lawyer and/or law firm who represents such Person pursuant to a written agreement, or who has an Interest in such Person's Claim Connected with ASR Hip Implants." (MSA § 1.2.19)

Agreement to exercise that authority, as such authority is specified in this Agreement . . . ." (MSA

§ 14.1.1)

The majority concludes that both the Drakes and Johnson agreed to arbitrate disputes

related to the ASR settlement under the terms of the MSA, but only disputes regarding certain

ASR hip claims. Specifically, the majority holds that while Johnson agreed to arbitrate disputes

relating to claimants he enrolled in the settlement program, by enrolling those clients he did not

thereby agree to arbitrate his contingent fee dispute with the Drakes, whom he did not enroll in the

settlement or represent subsequent to the approval of the MSA.

That conclusion is irreconcilable with the terms of the agreement. As the majority

recognizes, the MSA provides for the arbitration of "any dispute that arises under or otherwise in

connection with . . . any U.S. Program claim." (MSA § 14.1.2) Johnson's claim for 35% of the

Drakes' settlement clearly qualifies under that expansive language. The Drakes as "Enrolling U.S.

Program Claimants" and Johnson as "Enrolling Counsel" "agree[d] that authority over the process

contemplated by the U.S. Program . . . . resides with those Persons appointed pursuant" to the

MSA "as such authority is specified in" the MSA. (MSA § 14.1.1) That authority over "any dispute

that arises under or otherwise in connection with . . . any U.S. Program Claim" encompasses the

power to arbitrate the instant dispute. (MSA § 14.1.2) There is nothing in the text of the MSA to

support the majority's interpretation that enrollment in the settlement program operates as consent

to arbitrate only certain disputes relating to certain settlement claims.

A Texas Court of Appeals decision concerning a fee dispute between an attorney and his

former law firm, *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 13–18 (Tex. App. 2016),

discussed by the majority is consistent with this analysis. In that case, the court determined the

attorney was required to arbitrate according to a master settlement agreement to which he was not

a signatory because he was a "Participating Law Firm," as defined under the applicable agreement. *Id.* at 17–18. The majority incorrectly states that the court's holding depended upon agency principles. While his former law firm made agency-based arguments, the court concluded that the attorney was bound by the agreement to arbitrate because the master settlement agreement's "definition of a Participating Law Firm encompasse[d]" him. *Id.* at 18. Just like the attorney there, Johnson meets the relevant agreement's applicable definition for counsel bound to arbitrate disputes.

Accordingly, there are two contracts that cover Johnson's contingent fee claim: the ARA between the Drakes and Johnson, and the MSA. "In the context of multiple contracts, this court has adopted a more narrow test of arbitrability, examining which agreement, 'determines the scope of' the contested obligations." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007). The majority did not evaluate this case under *Nestle Waters* because it found there was only one relevant contract, the ARA. Nevertheless, the analysis that it does undertake supports the conclusion that the scope of Johnson's claim is determined by the MSA and therefore must be arbitrated according to its terms. The majority notes "to the extent that Johnson's contingent fee claim may have derived indirect benefits from the MSA, the MSA provided a 'holdback' of 5% of attorney's fees from the settlement award for the common benefit fund." *Ante* at 13 (citing MSA § 4.1.8). This so-called holdback was adopted by the Dallas arbitrator, who, despite recognizing that under the ARA the Drakes agreed to pay a contingent fee of 40%, only awarded Johnson a "net" 35% fee because "the MDL judge assessed a 'common benefit' fee applicable to all claimant attorney fee awards." (Corrected Final Award, R. 10-3, Page ID #260.)

As the district court stated, "[p]ermitting a party to any contract—to say nothing of one governing an area as broad and complex as the area this MDL addresses—to choose which

provisions of that agreement it will abide by, and which it won't, simply is untenable." *Drake* III, 2019 WL 4750608, at *4; *see also Stratton v. Portfolio Recovery Assocs., LLC*, 706 F. App'x 840, 846 (6th Cir. 2017) (recognizing that a party "cannot pick and choose which provisions of [a] contract are enforceable" (citation omitted)). Johnson himself stipulated to the 5% common benefit fee required by the MSA in the Dallas arbitration. This means that the scope of the Drakes' "contested obligations" according to the majority, the Dallas arbitrator, and Johnson himself was determined by the MSA. Accordingly, arbitration of Johnson's contingent fee claim must follow the procedures provided in that agreement under *Nestle Waters*.

There is no suggestion that the Dallas arbitration proceeded according to the terms required by the MSA. The MSA designated three special masters "to oversee the administration of claims for benefits and to make final and binding determinations under this Agreement with the authority of an Arbitrator under the Federal Arbitration Act." (MSA § 12.4.2) None of those so designated were the Dallas arbitrator. "When an arbitrator reaches a question not committed to him by the parties, he acts outside of his authority such that an order vacating such an award is appropriate." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 415 (6th Cir. 2008) (citations omitted); *see also* 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . .").

The district court's refusal to confirm the Dallas arbitration, decision to vacate the same, and order to the parties to adhere to the arbitration procedures set forth in the MSA were correct. Given that Johnson consented to abide by the arbitration provisions in the MSA through his representation of settling DePuy Orthopaedics claimants, I need not address the majority's analysis

relating to direct benefits estoppel or the inherent authority of the district court to manage an MDL

before concluding that the district court's orders should be affirmed.

### III.    Conclusion

Because Johnson consented to the arbitration procedures outlined in the  MSA for disputes

relating to the ASR hip MDL settlement, I would affirm the orders of the district court refusing to

confirm the Dallas arbitration award, vacating the same, and directing the parties to proceed with

arbitration pursuant to the MSA. Accordingly, I respectfully dissent.

# EXHIBIT C

## ATTORNEY REPRESENTATION AGREEMENT  - DEPUY ASR HIP DEVICE

1.   CLIENT(S), hereby retain(s) Steven M. Johnson, P.C d/b/a The Johnson Law Firm (JLF) , (hereinafter "attorneys" or "Firm") as attorneys to bring all claims Client may have against the manufacturer and distributor of the DEPUY ASR HIP DEVICE that caused Client's injuries, hereafter referred to as the "claim."

2.   Client understands and agrees that The Firm has not been retained to investigate or pursue, and will not investigate or pursue, any medical malpractice action against client's doctors or any healthcare provider or facility.

3.   For services rendered and to be rendered in this matter client agrees to pay the attorneys a fee, CONTINGENT ON WHAT IS RECOVERED in this matter by way of settlement, judgment or otherwise, to be computed at FORTY PERCENT (40%) of all sums recovered.

4.   After the above fees are deducted, client shall pay to attorneys, ONLY OUT OF THE CLIENT'S SHARE OF THE RECOVERY AND NOT OUT OF CLIENT'S POCKET, all court costs and expenses, advanced by the attorneys in connection with said matter. Costs shall include any "MDL Assessment or Fee", "common benefit fee" or any other fee or cost imposed by any court or withheld from any settlement or judgment. The attorneys are authorized to incur those expenses they deem reasonable and necessary to accomplish a satisfactory resolution of the claim and shall advance those expenses as incurred. The cost of these services not to exceed the customary and reasonable charges for such services in the geographic location they are provided. CLIENT WILL NOT OWE THE FIRM EITHER A FEE, REIMBURSEMENT OF EXPENSES, OR ANY OUT OF POCKET AMOUNTS IF AT THE FINAL DISPOSITION OF THE CASE NOTHING IS RECOVERED ON BEHALF OF THE CLIENT.

5.   Attorneys, their agents and employees, shall take all steps deemed by them to be necessary, reasonable and appropriate to properly prosecute the claim.

6.   THE CLIENT HEREBY GRANTS THE ATTORNEYS A LIEN ON THIS CAUSE OF ACTION, and a lien on any proceeds and any judgments recovered in connection with this cause of action as security for the payment of attorneys' fees and expenses as contracted for herein. Attorneys may assign their interest.

7.   THE CLIENT AGREES THAT THE ATTORNEYS RETAIN THE RIGHT AT ANY TIME FOLLOWING INVESTIGATION, DISCOVERY, OR LEGAL RESEARCH, TO RELEASE THEMSELVES FROM THIS CONTRACT AND WITHDRAW FROM THE REPRESENTATION OF THE CLIENT. THE ATTORNEYS WILL RETAIN A LIEN ON THE CASE FOR EXPENSES AND COSTS IN THE EVENT OF SUCH A WITHDRAWAL, WHICH HAVE BEEN ADVANCED ON THE CLIENT'S BEHALF. THE CLIENT AGREES TO PROTECT SUCH SUMS OUT OF ANY RECOVERY ULTIMATELY OBTAINED IN THE CASE.

8.   This contract is entered into in Tarrant County, Texas, which shall also be the place of performance and payment in accordance with the terms of the contract. Furthermore, this contract contains all the agreements of the parties. This agreement shall be construed in accordance with the laws of the State of Texas, and all obligations of the parties are performable in Tarrant County, Texas. In case any one or more of the provisions contained in this agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision, and this agreement shall be construed as if such invalid, illegal, or unenforceable provision did not exist. This agreement constitutes the only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties respecting the subject matter.

9.   CLIENT hereby gives ATTORNEY power of attorney to execute all documents, in CLIENT's name, associated with any litigation which may arise out of the incident in question, including, but not limited to, authorizations for the release of protected records, interrogatory answers, affidavits, trust documents, and/or other litigation-related documentation.

10.   Before signing this fee contract, I acknowledge that I have read it completely and understand it, or that it has been read and explained to me, and that all blanks have been completed and that I have received a copy.

11.   This contract is binding on the clients' heirs, executors, administrators and guardians of the person or estate.

12.   The client acknowledges that the attorneys have made NO GUARANTEE regarding the successful resolution of said cause of action, and all expressions relative thereto are matters of attorneys opinion only and shall not be considered as express or implied warranties of the claim's outcome.

13.   Attorneys have advised Client of the advantages and disadvantages of the use of arbitration to resolve any disputes arising from the interpretation, performance, or breach of this Fee Agreement. Client acknowledges that the Client understands that agreement to arbitration means that Client gives up or waives the right to a jury trial, which may affect the amount of damages, if any, ultimately awarded to the Client, and that the Client's right to discovery will be more limited than in a trial proceeding. It is, nevertheless, Client's desire that this Fee Agreement provide for binding arbitration of any disputes between client and the Firm.   ***[CLIENT INITIAL HERE _____ X

14.   Attorneys and Client agree that any dispute arising from the interpretation, performance, or breach of this Fee Agreement, including any claim of legal malpractice, but not including attorney disciplinary proceedings, shall be resolved by final and binding arbitration conducted in Fort Worth, by any other arbitrator that The Firm may choose. Attorneys and Client further agree that judgment upon any award rendered by the arbitrator in such proceedings may be entered by any state or federal court with jurisdiction over the matter.   ***[CLIENT INITIAL HERE _____ X

15.   Client acknowledges that Attorneys have specifically advised Client of the advantages and disadvantages of the use of arbitration to resolve disputes arising from the interpretation, performance, or breach of this Fee Agreement and given Client the opportunity to seek the advice of independent counsel concerning this provision and Client has either done so or expressly declines to do so.   ***[CLIENT INITIAL HERE _____ X

16.   I hereby swear and affirm I voluntarily and of my own free will and choice, without any solicitation whatsoever, by The Firm or anyone else, including any referring attorney, employed The Firm, without any promise of any remuneration or special favor, as my attorneys to compromise, settle, try or receive for and in my name all damages arising in me out of the above styled case.

17.   I AM NOT REPRESENTED BY ANY OTHER LAW FIRM OR ATTORNEY ON THIS CLAIM.


_____   DATE 1/24/12
CLIENT


_____   DATE 1/30/12
STEVEN M. JOHNSON, THE JOHNSON LAW FIRM

EXHIBIT
B

# EXHIBIT D

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 9 2017

CLERK, U.S. DISTRICT COURT
By
Deputy

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVEN M. JOHNSON,           )
       Plaintiff,            )
v.                           )   No. 3:16-CV-1993-L
WILLIAM DRAKE,               )
       Defendant.            )

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Steven M. Johnson's ("Plaintiff") Application for Order Confirming Domestic Arbitration Award [ECF No. 1] has been referred to the United States Magistrate Judge for recommendation pursuant to Title 28, United States Code, Section 636(b). Order of Reference, ECF No. 5. Plaintiff also filed a Motion to Confirm Domestic Arbitration Award and Enter Judgment [ECF No. 7]. Defendant William Drake ("Defendant") filed a Motion to Dismiss and Alternatively to Transfer Venue [ECF No. 8]. Defendant's Motion to Dismiss was referred to the United States Magistrate Judge for recommendation. Order of Reference, ECF No. 21. Defendant's alternative request to transfer venue was referred to the United States Magistrate Judge for determination. Order of Reference, ECF No. 22. Upon careful consideration, the undersigned respectfully recommends that the District Court GRANT Defendant's Motion to Dismiss [ECF No. 8] and DISMISS WITHOUT PREJUDICE Plaintiff's Application for Order Confirming Domestic Arbitration Award [ECF No. 1].

## BACKGROUND

Defendant, a resident of the state of Minnesota, was implanted with defective DePuy ASR hip devices in April and May of 2007. Appl. 1 & 3, ECF No. 1. On December 7, 2010, the United States Judicial Panel on Multi-District Litigation ("MDL") ordered the cases arising from the DePuy

ASR hip devices to be centralized in the Northern District of Ohio in MDL Docket No. 1:10-md-2197-JJH, *In re: DePuy Orthopaedics, Inc.* Def.'s Br. 5, ECF No. 9; Pl.'s Ex. 1, ECF No. 24. In response to an advertisement for a lawsuit involving DePuy ASR hip devices, Defendant's wife contacted Plaintiff's law firm by telephone on September 27, 2010 to obtain information about retaining Plaintiff to represent Defendant for his claims. Appl. 3, ECF No. 1; Def.'s Br. 5, ECF No. 9. The parties entered into an Attorney Representation Agreement in January of 2012. Appl. 3-4, ECF No. 1; Def.'s Br. 6, ECF No. 9. The Attorney Representation Agreement contains an arbitration clause which states the following:

> Attorneys and Client agree that any dispute arising from the interpretation, performance, or breach of this Fee Agreement, including any claim of legal malpractice, but not including attorney disciplinary proceedings, shall be resolved by final and binding arbitration conducted in Fort Worth, by any other arbitrator that the Firm may choose. Attorneys and Client further agree that judgment upon any award rendered by the arbitrator in such proceedings may be entered by any state or federal court with jurisdiction over the matter.

Pl.'s App. 1 ¶ 14, ECF No. 1-2. The Attorney Representation Agreement also includes a 40% contingency fee for all sums recovered on Defendant's claim and all advanced costs and expenses. Pl.'s App. 1 ¶¶ 3 & 4, ECF No. 1-2. On December 6, 2012, Plaintiff received a letter from an attorney, Charles H. Johnson, terminating Plaintiff's representation on behalf of Defendant in the MDL and explaining that Defendant seeks to proceed with a local attorney. Appl. 4, ECF No. 1. Plaintiff notified Defendant's attorneys that Plaintiff had a 40% contractual fee interest for any recovery on Defendant's claims. Appl. 4, ECF No. 1. However, Defendant refused to honor the parties' contingency fee agreement. Appl. 5, ECF No. 1.

On August 1, 2014, Plaintiff filed an Original Complaint, Application to Compel Arbitration, and Request for Declaratory Relief in the Northern District of Texas in Civil Action No. 4:14-CV-

2

611-A, *Steven M. Johnson, P.C. v. Drake*. Appl. 5, ECF No. 1. On November 25, 2014, Judge

McBryde dismissed that action for lack of personal jurisdiction. Appl. 5, ECF No. 1; Def.'s App.

182-99, ECF No. 10. Plaintiff also commenced arbitration with JAMS Dallas on August 1, 2014 in

JAMS Ref. No. 1310021509. Appl. 5, ECF No. 1; Pl.'s App. 38-55, ECF No. 1-2. Defendant

submitted a Response to Arbitration and Statement of Affirmative Defenses, participated in the

selection of the arbitrator, and filed objections to the arbitration. Appl. 5-6, ECF No. 1. The

Arbitrator selected by the parties, Judge Glen Ashworth ("Arbitrator Ashworth") found that he had

jurisdiction to arbitrate the matter and that the issues were arbitrable. Appl. 6, ECF No. 1; Pl.'s App.

41, ECF No. 1-2. In the arbitration, Defendant exchanged discovery, engaged in settlement

negotiations, participated in hearings, and produced an expert report. Appl. 6, ECF No. 1; Pl.'s App.

41, ECF No. 1-2.

On July 7, 2016, Arbitrator Ashworth issued a Corrected Final Award in Plaintiff's favor as

follows: (1) the parties' Attorney Representation Agreement was a valid and enforceable contract;

(2) Defendant's fraudulent inducement claim was denied; (3) Defendant terminated the Attorney

Representation Agreement without good cause; (4) Defendant's unconscionable fee claim was

denied; (5) Defendant's fee forfeiture claim was denied; (6) Plaintiff was awarded his net 35%

contingency fee from Defendant's settlement award in an amount of $196,612.50; (7) Plaintiff was

awarded his net 35% contingency fee from Defendant's discretionary loss of earnings award; (8)

Plaintiff was granted a lien on Defendant's recovered claims; (9) Defendant breached the Attorney

Representation Agreement; (10) Plaintiff was awarded attorneys' fees in the amount of $136,457.00;

(11) Plaintiff's request for litigation expenses was denied; (12) Plaintiff was awarded $20,145.47

for incurred arbitration costs; and (13) the Final Award resolved all issues in the arbitration

3

proceeding and any relief not specifically granted was denied. Appl. 7, ECF No. 1; Pl.'s App. 54, ECF No. 1-2.

On the same day Arbitrator Ashworth issued his Corrected Final Award, Plaintiff filed his Application for Order Confirming Domestic Arbitration Award [ECF No. 1] in the District Court. Appl., ECF No. 1. Plaintiff filed a Motion to Confirm Domestic Arbitration Award and Enter Judgment [ECF No. 7] on August 18, 2016 arguing that a Final Judgment should be entered in his favor, because Defendant failed to timely file a response. Pl.'s Br. 3-5, ECF No. 7-1. On the same date as the filing of Plaintiff's motion, Defendant filed his Motion to Dismiss and Alternatively to Transfer Venue arguing that the District Court lacks personal jurisdiction over him, because he does not have minimum contacts with this forum, and in the alternative, seeking a transfer to the Northern District of Ohio where the MDL was pending. Mot. to Dismiss 1-2, ECF No. 8. Defendant also argues that Plaintiff failed to properly serve him, that *res judicata* bars the re-litigation of the personal jurisdiction issue, and that Federal Rule of Civil Procedure 41 precludes this lawsuit, because Plaintiff dismissed his cause of action against Defendant on two previous occasions. Def.'s Br. 16-23, ECF No. 9. On November 18, 2016, Plaintiff filed a notice attaching the Order of Dismissal with respect to Defendant's claims in the MDL in the Northern District of Ohio. Notice, ECF No. 24.

## ANALYSIS

Among other arguments, Defendant argues in his Motion to Dismiss that the District Court should find that it lacks personal jurisdiction over him as previously determined by Judge McBryde in *Steven M. Johnson, P.C. v. Drake*, No. 4:14-CV-611-A. Def.'s Br. 1, ECF No. 9; Def.'s App. 182-99, ECF No. 10. In his Memorandum Opinion and Order, Judge McBryde concluded that Plaintiff

failed to show that Defendant had sufficient contacts with Texas to establish *in personam* jurisdiction and dismissed the case for lack of personal jurisdiction. Def.'s App. 198, ECF No. 10. In his response to Defendant's Motion to Dismiss, Plaintiff argues that Defendant is confusing constitutional personal jurisdiction principles with federal law that allows a court to exercise personal jurisdiction after a final arbitration award has been issued. Pl.'s Br. 16, ECF No. 13-1 (citing 9 U.S.C. § 9).

The Federal Arbitration Act ("FAA"), Title 9, United State Code, Section 9 ("Section 9") states as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 9. As previously discussed, the Attorney Representation Agreement states that the parties "agree that judgment upon any award rendered by the arbitrator in such proceedings may be entered by any state or federal court with jurisdiction over the matter." Pl.'s App. 1 ¶ 14, ECF No. 1-2. The arbitration award was issued in Dallas, Texas.[1] Pl.'s App. 38-55, ECF No. 1-2. Therefore, Plaintiff

---

1. While the Attorney Representation Agreement states that the arbitration should take place in Fort Worth, it appears to have been conducted in Dallas. *See* Attorney Representation Agreement, ECF

may file his Application for Order Confirming Domestic Arbitration Award in this Court pursuant

to Section 9. 9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then such

application may be made to the United States court in and for the district within which such award

was made."). Because there was no arbitration award to confirm at the time Judge McBryde issued

his November 25, 2014 Memorandum Opinion and Order finding that the Court lacked personal

jurisdiction over Defendant, the FAA was not applicable. Def.'s App. 182-99, ECF No. 10.

However, the FAA is applicable to this case, because this case was filed on the same date as the July

7, 2016 arbitration award. Appl., ECF No. 1; Pl.'s App. 38-55, ECF No. 1-2.

Plaintiff's Application for Order Confirming Domestic Arbitration Award states that

Defendant is a resident of the state of Minnesota. Appl. 1, ECF No. 1. Section 9 of the FAA specifies

that, upon service of the notice of the application to a nonresident adverse party by a U.S. Marshal

in a district where the nonresident is found, the District Court shall have personal jurisdiction over

the nonresident "as though he had appeared generally in the proceeding." 9 U.S.C. § 9. However,

the Proof of Service filed by Plaintiff shows that Jim Satcliffe, a process server located in Minnesota,

not a U.S. Marshal, served the notice of Plaintiff's application. Proof of Service, ECF No. 6. "A

federal court is without personal jurisdiction over a defendant unless the defendant has been

[properly] served . . . ." *Cunningham v. Burns*, No. 3:12-CV-1824-L (BH), 2013 WL 4505157, at

\*2 (N.D. Tex. Aug. 23, 2013) (citing *Pavlov. v. Parsons*, 574 F. Supp. 393, 399 (S.D. Tex. 1983));

*see also Dunlap v. City of Fort Worth*, No. 4:13-CV-802-O (BJ), 2014 WL 1677680, at \*3 (Apr. 28,

2014) ("Because service of process is improper, the Court cannot exercise personal jurisdiction over

---

No. 1-2 at 4 ("Attorneys and Client agree that any dispute . . . shall be resolved by final and binding arbitration conducted in Forth Worth[.]"); Corrected Final Award, ECF No. 1-2 at 47 ("The arbitration was convened in Dallas, Texas[.]").

Defendants." (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999))). The "fact that the defendant may have received notice of this civil action is insufficient for service of process." *Dunlap*, 2014 WL 1677680, at *3 (citing *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988)).

Given that the basis for the Court *in personam* jurisdiction over Defendant, as argued by Plaintiff in his response to Defendant's Motion to Dismiss, is 9 U.S.C. § 9, but the notice of Plaintiff's application was not properly served as required under this provision, and because the Court does not otherwise have personal jurisdiction over Defendant, as discussed at length in Judge McBryde's November 25, 2014 Memorandum Opinion and Order, Plaintiff's application should be dismissed without prejudice. *See* Pl.'s Br. 16, ECF No. 13-1; Def.'s App. 182-99, ECF No. 10; *Papa Berg, Inc. v. World Wrestling Entm't, Inc.*, No. 3:12-CV-2406-B, 2013 WL 2090547, at *1 (N.D. Tex. May 15, 2013) ("The motion is granted to the extent it seeks dismissal of all claims against Seitz and Johnston for lack of personal jurisdiction and improper service. As such, the Complaint is dismissed without prejudice as to Seitz and Johnston.").

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the District Court

GRANT Defendant's Motion to Dismiss [ECF No. 8] and DISMISS WITHOUT PREJUDICE

Plaintiff's Application for Order Confirming Domestic Arbitration Award [ECF No. 1].

**SO RECOMMENDED**, this _7_ day of _February_, 2017.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions and recommendation. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **STEVEN M. JOHNSON** | ( | |
|     **Petitioner** | ( | |
| | ( | |
| **VS.** | ( | **No. 3:16-cv-01993-L** |
| | ( | |
| **WILLIAM SCOTT DRAKE** | ( | |
|     **Respondent** | ( | |

## PETITIONER STEVEN M. JOHNSON'S
## AMENDED APPLICATION FOR ORDER
## CONFIRMING DOMESTIC ARBITRATION AWARD

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Petitioner, Steven M. Johnson, makes application for an order from this Court confirming the Corrected Final Award received in a domestic arbitration, rendered by the Honorable Glen Ashworth (Ret.) of Judicial Arbitration and Mediation Services ("JAMS"), Dallas, Texas.

### A.  PARTIES

1.      Petitioner Steven M. Johnson ("Johnson"), is an individual, a citizen of Texas, and engaged in the practice of law with a principal place of business in Fort Worth, Tarrant County, Texas.

2.      Respondent William "Scott" Drake ("Drake") is an individual and citizen of Minnesota with an address located at 1477 Sherman Lake Road, Lino Lakes, Minnesota 55082.  He may be served at this address.

### B.  JURISDICTION AND VENUE

3.      This is a proceeding to confirm a domestic arbitration award arising under the Federal Arbitration Act, 9 U.S.C. §§ 1, 9 (West 2016).

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A §
1332(a)(1) because Johnson and Drake are citizens of different U.S. states and the amount in
controversy of this matter well exceeds the sum or value of $75,000, exclusive of interest and costs.
The Corrected Final Award in arbitration which Petitioner seeks to confirm equals or exceeds
$353,214.97 (Three Hundred Fifty-Three Thousand Two Hundred Fourteen Dollars and 97 cents).
See Appendix, Exhibit F, APX054-055, Corrected Final Award dated July 7, 2016, filed
concurrently with this Application, and incorporated herein.

5.      The Court additionally has personal jurisdiction over Respondent William "Scott" Drake
pursuant to 9 U.S.C. § 9 because this dispute arises out of a contract for legal services requiring
performance in the state of Texas, and Drake has participated in an arbitration in Dallas, Texas, since
2014, the Arbitrator finding that he had subject matter jurisdiction over the dispute and personal
jurisdiction over Drake. App., Exhibit A, APX001; Exhibit F, "Procedural History," APX040-041.
Notice of this Application has been served on Drake, thereby giving this Court "jurisdiction of such
party as though he had appeared generally in the proceeding." 9 U.S.C.A. § 9.

6.      Venue is proper in this Court because a substantial part of the events giving rise to this
Application have taken place within this District and Division, and the parties proceeded in Dallas,
Texas, as the venue for their arbitration, which has been in process since August 1, 2014. 28U.S.C.
§ 1391(b)(2); App., Exhibit F, APX038-057.  In addition, venue in this District is proper pursuant
to 9 U.S.C.A. § 9 in that the Contract out of which this fee dispute arose does not specify the Court
which is to confirm an arbitration award, see App., Exhibit A, Section 14, APX001, filed
concurrently with this Application and incorporated by reference.  Consequently, venue is proper
under 9 U.S.C.A. § 9 in that the Corrected Final Award, App., Exhibit F, was made in the Northern

District of Texas, Dallas Division. App., Exhibit F, APX038-057.

## C. CONDITIONS PRECEDENT

7.     All conditions precedent have been performed or have occurred.  The Corrected Final Award

is final under JAMS Rule 24(k).[1]

## D. FACTS OF THE CASE

8.     At all times relevant to these pleadings, Steven M. Johnson was a duly licensed attorney in

good standing with the State Bar of Texas, and practiced law by and through Steven M. Johnson,

P.C., d/b/a The Johnson Law Firm. App., Exhibit F, APX042.

9.     Drake was implanted with defective DePuy Hip ASR prosthetic devices in April 2007 and

May 2007. App., Exhibit F, APX042.  On or about September 27, 2010, Drake's wife contacted

Johnson's law firm in Fort Worth, Texas, by phone and advised that Drake had been implanted with

DePuy ASR hip implants, asserted personal injuries had resulted from these implantations, and

requested information about retaining Johnson to represent Drake with respect to his claims.

Johnson confirmed Drake's contact by mail that date and sent the requested information to Drake.

App., Exhibit F, APX042-043.

10.     Johnson provided detailed information about the defective hip prosthesis, and the DePuy Hip

ASR litigation in general, to Drake after the initial contact. *Id.*  A Multi District Litigation was

created for investigating, handling, and processing claims arising from the defective implants in 2010

---

[1]

 The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure
pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule
25, fourteen (14) calendar days after service is deemed effective if no request for a correction is
made, or as of the effective date of service of a corrected Award. JAMS Rule 24(k).

or 2011. On or about January 30, 2012, Johnson and Drake entered into a valid written contract,

entitled Attorney Representation Agreement ("Contract"), with respect to said claims, attached hereto

as App., Exhibit A, APX001; Exhibit F, APX043. This Contract contained arbitration provisions

which were separately initialed by Drake. App., Exhibit A, Sections 13-15, APX001. The Contract

required that "any disputes between attorney and client" other than disciplinary actions were to be

arbitrated. App., Exhibit A, Section 14, APX001.

11.    The Contract provided for a fee, contingent on what would be recovered, to be computed as

forty percent (40%) of all sums recovered on Drake's claims, in addition to all costs and expenses

advanced by Johnson, and a lien on Drake's claims and on any proceeds or judgments recovered in

connection with the claims as security for the payment of the attorneys' fees, costs, and expenses.

App., Exhibit A, Section 3, 4, 6, APX001. On November 30, 2012, Johnson filed a Short Form

complaint on behalf of Drake since Johnson had just been made aware that Drake was going to

undergo a revision of one of the hip prostheses in the near future. App., Exhibit A, Section 9,

APX001; Exhibit F, APX044, 049.

12.    On December 6, 2012, Johnson received by mail a letter dated November 30, 2012, from

attorney Charles H. Johnson on behalf of Drake, unilaterally substituting in as counsel for Drake in

the MDL lawsuit and terminating Johnson's representation without stating any reason stemming from

Johnson's actions in the case, simply advising that Drake wanted an attorney local to him and that

Charles Johnson had an ongoing professional relationship with Drake's family. App., Exhibit F,

APX044. Johnson promptly provided Mr. Charles Johnson, the second lawyer for Drake, and later

Meshbesher & Spence, Ltd., the third lawyer for Drake, with copies of the file, as requested, and

notified each that Johnson retained Johnson's 40 percent contractual fee interest with respect to any

recovery obtained on Drake's claims. App., Exhibit F, APX044.

13.     On December 17, 2012, Drake underwent the first revision of one of his hip prostheses.  He subsequently underwent multiple revisions on both hips. App., Exhibit F, APX044-045.  On January 14, 2013, Drake terminated his second lawyer, Charles Johnson, and then later retained Drake's third and current attorneys, Meshbesher & Spence, Ltd. App., Exhibit F, APX044.

14.     Settlements were reached in the DePuy Hip ASR MDL litigation in 2013 and 2015, and Drake's claims were submitted for settlement awards by Meshbesher & Spence in 2014 and 2015. One settlement claim for a discretionary lost wages claim is still pending. App., Exhibit F, APX045.

15.     Drake, by and through Meshberger & Spence, refused to honor Johnson's demand for the contractually agreed contingency fees. App., Exhibit F, APX044.  On August 1, 2014, Johnson filed an Original Complaint, Application to Compel Arbitration, and Request for Declaratory Relief in the Northern District of Texas, Cause No.14-cv-00611-A, asking the District Court to compel an arbitration proceeding between Johnson and Drake, or alternatively requesting the Court to declare the rights and interests of Johnson with respect to the Contract.  Ultimately, the District Court (prior to any arbitration commencing) concluded that it did not have personal jurisdiction over Drake to compel arbitration, and dismissed the Complaint in the Northern District of Texas for lack of personal jurisdiction on November 25, 2014. App., Exhibit F, APX041.

16.     In addition to the Original Complaint and Motion to Compel Arbitration filed in the Northern District of Texas, Johnson commenced an arbitration with JAMS Dallas on August 1, 2014, styled "Steven M. Johnson vs. William Drake, JAMS Ref. No. 1310021501," by filing a Demand for Arbitration. App., Exhibit F, APX038, 041.  Johnson served the Demand on Drake, who filed a

Response to Arbitration and Statement of Affirmative Defenses. JAMS issued a Commencement Letter, notifying the parties that the requirements for arbitration were met in accordance with applicable JAMS Comprehensive Rules and Procedures. App.,Exhibit F, APX040-042. Drake participated in selection of the arbitrator pursuant to JAMS Rules and Judge Glen Ashworth (Ret.) was selected. *Id.*, APX041. Drake asserted untimely objections to the arbitration. He was held to have waived any jurisdictional complaints under the JAMS Rules by Order of the Arbitrator on January 20, 2015. The Arbitrator found that JAMS had jurisdiction to arbitrate this matter between the parties and that the issues were arbitrable. App., Exhibit F, APX041.

17.     Subsequently, Drake exchanged discovery in the arbitration, engaged in settlement negotiations with Johnson, participated in several hearings, sought and scheduled depositions of the parties, produced an expert report in rebuttal to Johnson's designation, and sought an extension of the discovery schedule. App., Exhibit F, APX041.

18.     On February 17, 2016, Johnson was served with a "Scheduling Order No. 1" issued by Special Master Cathy Yanni of JAMS in "Steven M. Johnson P.C., d/b/a The Johnson Law Firm v. William Drake in JAMS Reference No. 1200048059," purportedly initiating a separate JAMS arbitration under the "Master Settlement Agreement" in the DePuy Hip ASR Settlement. App., Exhibit C, APX009-010; Exhibit F, APX042. Many lengthy motions and responses were filed by both parties in both arbitrations urging their positions.

19.     Johnson also filed a Petition in the Northern District, Dallas Division, Case No. 3:16-cv-00493-D, seeking an order compelling the JAMS Dallas arbitration to proceed to resolution. App., Exhibit F, APX042. However, Special Master Yanni then concluded that she did not have jurisdiction and closed the second JAMS arbitration. App., Exhibit C, APX009-010; Exhibit F,

APX042. Johnson, therefore, nonsuited it's Petition before any ruling had been made by the Northern District Court, and the JAMS Dallas arbitration proceeded to full hearing over three days, April 10, May 9, and May 10, 2016. App., Exhibit E, APX030-037; Exhibit F, APX042.

20.     On July 7, 2016, Judge Ashworth issued a Corrected Final Award in favor of Johnson in the following respects:

   a.     The parties' Attorney Representation Agreement was found to be a valid and enforceable contract;

   b.     Drake's claim for Fraudulent Inducement was denied;

   c.     The parties' Attorney Representation Agreement was found to have been terminated by Drake without "good cause;"

   d.     Drake's claim of an unconscionable fee was denied;

   e.     Drake's claim for fee forfeiture was denied;

   f.     Johnson was awarded his net 35% contingency fee from Drakes Part A and B Settlement award in the amount of $196,612.50;

   g.     Johnson was awarded his net 35% contingency fee from Drake's discretionary loss of earnings award (EIF Claim no. 3585) to the extent of the as yet undetermined amount when and if Drake recovers from that claim;

   h.     Johnson was granted a lien on Drake's recovered claims (itemized in subsections f. and g., *supra*);

   i.     Drake was found to have breached the Attorney Representation Agreement;

   j.     Johnson was awarded Johnson's attorneys fees in the amount of $136,457 incurred

in seeking to recover his contingency fee and costs;

k.    Johnson was awarded Johnson's expended JAMS costs and Arbitrator's costs in the amount of $20,145.47; and,

l.    Johnson's attorneys' claims for litigation expenses and costs were denied. App., Exhibit F, APX054-055.

21.    Petitioner hereby files this application to confirm the Corrected Final Award reflected in App., Exhibit F, APX054-055.

## E.  PRAYER

22.    The Corrected Final Award handed down by Judge Ashworth is a final, binding award without defect under the law.  For these reasons, Petitioner asks the Court to issue an Order confirming the Corrected Final Award and enter judgment in Petitioner's favor against Respondent in accordance with the Corrected Final Award, for which let execution issue.

Respectfully submitted,

/s/ *Thomas R. Needham*

BY:    _____

Thomas R. Needham,
State Bar No. 14855300
johnsonneedhamlaw@gmail.com
Law Offices of Thomas R. Needham
909 Meadow View Drive
Richardson, Texas 75080
(817) 523-1330  (469) 248-0602 fax
**ATTORNEYS FOR PETITIONER,**
**STEVEN M. JOHNSON**

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STEVEN M. JOHNSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-1993-L** |
| | § | |
| **WILLIAM DRAKE,** | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the court is Respondent's Motion to Dismiss, or in the Alternative to Stay Proceedings (Doc. 43), filed April 24, 2017. After considering the motion, briefs, evidence, the record, and taking judicial notice of the proceedings in related Civil Action No. 1:13-DP-20140, pending in the United States District Court for the Northern District of Ohio, Western Division, the court *sua sponte* **transfers** this action to the Northern District of Ohio, Western Division, for possible consolidation with related Civil Action No. 1:13-DP-20140, and **denies as moot** Respondent's Motion to Dismiss, or in the Alternative to Stay Proceedings (Doc. 43).

Respondent William Drake ("Drake") requests that the court dismiss or stay this action under the first-to-file rule. Drake contends that he initiated a proceeding in the United States District Court for the Northern District of Ohio, Western Division, where related multi-district litigation ("MDL") was pending, by filing a motion to vacate the arbitration award at issue on June 22, 2016, the same date that the final arbitration award ("Final Award") was entered, before Plaintiff Steven Johnson ("Johnson") initiated this action and filed his motion to confirm the arbitration award on July 7, 2016.

Order – Page 1

Johnson responds that Drake's motion to vacate the arbitration award was filed prematurely because the arbitration award was not final until the "Corrected Final Award" was entered on July 7, 2016, and Drake never moved to vacate the "Corrected Final Award." Johnson further asserts that the issues raised by Drake, including those regarding the first-to-file rule, are foreclosed by the magistrate judge's prior findings and recommendation (Doc. 30) and this court's March 30, 2017 opinion (Doc. 39). Among other things, Johnson previously argued in response to Drake's first motion to dismiss that the court in the MDL action lacked jurisdiction to hear the case and lacked personal jurisdiction over him. Johnson contends that the Northern District of Texas, where the "Corrected Final Award" was entered, "is the proper venue for confirmation of the Corrected Final Award" because the "FAA provides that if no court is specified in the arbitration agreement of the parties, then such application to confirm the arbitration award may be made to the United States court in and for the district within which such award was made." Pl.'s Resp. ¶ 4 (Doc. 45).

The Fifth Circuit generally follows the first-to-file rule, which is based on "the principle of comity [that] requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n. v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This is because, "[i]n the absence of compelling circumstances the court initially seized of the controversy should be the one to decide whether it will try the case." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971); *West Gulf Maritime Ass'n.*, 751 F.2d at 729. The Fifth Circuit has recognized that district courts have the inherent power to stay,

transfer, or dismiss an action when the issues presented can be resolved in an earlier filed action pending in another federal district court. *Id.* at 729-30.

Civil Action No. 1:13-DP-20140, which is pending in the Northern District of Ohio, Western Division, is one of many cases "which comprise this multidistrict litigation involving the DePuy ASR hip device which was transferred to [the district court presiding over Case No. 1:13-DP-20140] in December 2010 by the Judicial Panel on Multidistrict Litigation." *Drake v. DePuy Orthopaedics, Inc., et al.*, 1:13-DP-20140, 2017 WL 6502489, at *1 (N.D. Ohio Dec. 19, 2017) (slip op.) ("Ohio case"). This litigation and the Ohio case both pertain to a dispute between Johnson and Drake regarding Johnson's entitlement to attorney's fees for his representation of Drake, who was implanted with an allegedly defective DePuy Hip ASR prosthetic device in 2007, in the DePuy ASR hip device multi-district litigation ("MDL"). Also at issue in both cases is whether an arbitration award in favor of Johnson should be affirmed or vacated. The Ohio case and the motion to vacate the arbitration award by Drake were filed first.

Based on the authority cited by Drake, the court concludes that entry of the "Corrected Final Award" on July 7, 2016, did not affect the finality of the June 22, 2016 "Final Award" or Drake's first-filed status. *See* Def.'s Reply 2-4 (Doc. 48). The initial "Final Award" entered on June 22, 2016, determined all significant issues such as liability and damages, and the "Corrected Final Award" did not change the "Final Award" in any substantive manner. Further, the "Corrected Final Award" states that the "Final Award" was signed and service was perfected as to the "Final Award" on June 22, 2016. The "Corrected Final Award" also indicates that it was entered for the sole purpose of correcting a single typographical error (changing the term "ADA" to "ARA") upon a request made by Johnson on June 28, 2016, *after* Drake had already filed his motion to vacate the

arbitration award in the Ohio case. Thus, entry of the Corrected Final Award does not affect the court's determination that the proceeding commenced by Drake was initiated first.

Moreover, Johnson's jurisdictional arguments were rejected on December 19, 2017, by the district court in the Ohio case in ruling on a motion by Drake to enforce a Master Settlement Agreement ("MSA") and vacate the arbitration award. *See Drake*, 2017 WL 6502489, at *4-9 (N.D. Ohio Dec. 19, 2017) (slip op.). Specifically, in a well-reasoned opinion, the Ohio district court determined that it had subject matter jurisdiction over the parties' fee dispute and personal jurisdiction over Johnson, and granted Drake's motion to enforce the MSA, reasoning that, "[i]n the absence of an agreement between the parties to submit their dispute to a different forum, the proper forum to consider such disputes must and should rest with the MDL court." *Id.* at *9. Because the Ohio district court determined that it was "the proper forum for this dispute, [it found] it unnecessary to address the motion to vacate the arbitration award [filed by Drake] as it has no binding effect on the resolution of fees in this case." *Id.*

Regardless of whether the arbitration award is binding, Johnson cannot avoid the first-filed rule by initiating a second action in this district that involves substantially overlapping issues while the action in the Northern District of Ohio is pending. Johnson's contention that Drake's first-to-file argument is foreclosed by the magistrate judge's prior findings and recommendation (Doc. 30) and this court's March 30, 2017 opinion (Doc. 39) is also unavailing, as the court has authority to amend or vacate any of its orders prior to entry of judgment. Rather than stay or dismiss without prejudice this duplicative action as requested by Drake, the court, for purposes of comity and efficiency, *sua sponte* **transfers** it to the United States District Court for the Northern District of Ohio, Western Division, for possible consolidation with related Civil Action No. 1:13-DP-20140; **denies as moot** Respondent's Motion to Dismiss, or in the Alternative to Stay Proceedings (Doc. 43); and **vacates**

its March 30, 2017 opinion (Doc. 39). The clerk of the court **shall** effect this transfer in accordance with the usual procedure.

**It is so ordered** this 20th day of December, 2017.

Sam A. Lindsay
United States District Judge